IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 25, 2001

## JAMAL COOPER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-B-1069     J. Randall Wyatt, Jr., Judge**

---

**No. M2001-00593-CCA-R3-PC - Filed October 17, 2001**

---

The petitioner filed a petition for post-conviction relief from his conviction for voluntary manslaughter, alleging that his guilty plea was involuntary and that he was denied the effective assistance of trial counsel. Following an evidentiary hearing, the post-conviction court dismissed the petition. In a timely appeal to this court, the petitioner raises the issue of whether the post-conviction court erred in finding that he received the effective assistance of trial counsel. After a careful review, we affirm the dismissal of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOE G. RILEY, JJ., joined.

Mike Anderson, Nashville, Tennessee, for the appellant, Jamal Cooper.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The petitioner, Jamal Cooper, was indicted on counts of first degree premeditated murder, felony murder, aggravated robbery, and especially aggravated kidnapping. On February 28, 2000, he entered a guilty plea to voluntary manslaughter as a lesser-included offense of the first degree premeditated murder charge. As part of the plea agreement, the State agreed to dismiss the remaining counts of the indictment, as well as a separate drug charge pending against the petitioner, and the petitioner agreed to be sentenced as a Range III offender to fifteen years at 45%.

During the guilty plea proceeding, the prosecutor advised the trial court that if the case had gone to trial, the State intended to present proof that in the late evening and/or early morning hours of November 22-23, 1997, the victim, riding in his pickup truck with three acquaintances,

approached the petitioner and a codefendant, Kelvin Jackson, who were in a car in the parking lot of a Nashville restaurant. The victim, who had earlier arranged to buy drugs from the petitioner and Jackson, wanted to tell the men that he had already gotten the drugs elsewhere. The conversation became heated, and the petitioner and Jackson beat the victim until he was almost unconscious, before placing him in the trunk of their vehicle. They then drove to a house on White's Creek Pike to retrieve a rifle and some gasoline, with one of them driving the vehicle with the victim inside the trunk, and the other driving the victim's pickup truck, with his three acquaintances inside. In a wooded area behind the house, the petitioner and Jackson beat the victim again, shot him, placed him in his truck, doused the truck with gasoline, and set it afire. The burned-out truck, with the victim's remains inside, was discovered approximately eleven months later.

On June 8, 2000, the petitioner filed a *pro se* petition for post-conviction relief. On September 15, 2000, with the assistance of counsel, he filed an amended petition, alleging that his trial counsel was ineffective, *inter alia*, for failing to inform him that the State's witnesses, the victim's companions in the pickup truck, could be considered as accomplices, whose testimony had to be corroborated in order for him to be convicted of the crimes. The petitioner further alleged that his guilty plea was involuntary because his mother and his trial counsel pressured him into pleading guilty.

At his December 13, 2000, evidentiary hearing, the petitioner testified that his grandfather had died four days before he entered his plea; for that reason, he felt that he had not been in "the right mind to make a sound decision." His trial counsel told him that he would receive a life sentence if he did not accept the State's offer. He refused to sign the plea agreement when counsel first brought it to him, however. Trial counsel then went to get his mother, who begged him to sign the plea agreement documents. Although he still had not wanted to sign, he finally succumbed to the pressure of his mother and trial counsel to do so. The petitioner said that trial counsel never talked with him about what the State needed to prove in order to obtain convictions, and did not tell him that the State's witnesses could be considered as accomplices. Had he known that "by law [he] couldn't sustain a conviction," the petitioner said he would not have signed the plea agreement and pled guilty.

On cross-examination, the petitioner acknowledged that he told the trial court, under oath at his guilty plea hearing, that he had not been placed under any pressure to plead guilty, and that he was entering his plea knowingly and voluntarily. Further, he admitted that the only pressure exerted by trial counsel consisted of counsel's urging that he accept the plea in order to avoid a life sentence. He also admitted that, as part of the plea bargain agreement, the State had dismissed a separate drug charge that was pending against him, for which he could have received a sentence of twelve years.

The petitioner's mother, Wanda Key, testified that on the day that the petitioner entered his plea, she and trial counsel went to her son's holding cell and talked with him for about fifteen minutes about signing the plea agreement. Key said that trial counsel encouraged her son to plead guilty. She said that she also encouraged him to plead guilty, and that she thought she might have "coerced him a little bit" into signing the agreement. She admitted, however, that she thought that

the agreement was in her son's best interest, given his options at the time. She acknowledged that trial counsel hired a team of investigators to investigate her son's case; that she talked to them "frequently," in at least the week before her son had pled guilty; that trial counsel stayed in contact with her and her family during that time; that the State had witnesses prepared to testify that her son committed the murder; and that he faced a possible life sentence if convicted of the crime.

Trial counsel testified that he had been practicing law since 1982. He worked for the Kentucky Public Advocacy Office from 1982 to 1986, and was with the Metro Public Defender's Office from 1986 to 1991. From 1991 until the time of the hearing, he had been in the private practice of law, concentrating predominantly on criminal cases. Members of his firm were considered experts in the field of criminal law, and he had consulted with them on the petitioner's case. He said that the State characterized the three witnesses to the murder as victims, who had acted under duress, rather than as accomplices. He had hired a three-person investigative team, who thoroughly investigated and researched the case. Based on their investigation, and a thorough review of the State's evidence in the case, he and his colleagues concluded that whether or not these witnesses were accomplices was not a question of law, but instead would be a question of fact for the jury to determine.

Trial counsel testified that the State had forensic pathological evidence in the case, as well as the testimony of the three witnesses who alleged they had witnessed the petitioner and his codefendant kidnap, rob, and murder the victim. He also learned that the codefendant was prepared to testify that he and the petitioner had been together with a gun, that they had held the witnesses under duress, and that he was not sure which one of them had actually shot the victim.

Trial counsel said that the petitioner maintained, up until the week before trial, that he had not been present and had not known about the crime. Trial counsel had thought that they had a strong case for trial. His defense strategy was to attack the credibility of the witnesses and to present a quasi-alibi, in the form of testimony by the petitioner's girlfriend that the petitioner's usual routine was to spend Saturday night at her house, and then to attend church with her on Sunday morning. A week before trial, however, the petitioner changed his story, first admitting to trial counsel that he had been involved and had fired two shots at the victim, one which hit his finger and one which missed; and then later stating that his only role was to provide the gun and to help dispose of the body. Trial counsel explained that, based on these events that transpired in the week before trial, he strongly recommended that the petitioner accept the plea bargain, as being in his best interest. He thought that the facts in the case made for an either-or situation, in which the jury would either convict the petitioner of first degree murder, or acquit him of the crimes. There was "no question" in trial counsel's mind that both sides compromised in order to reach a settlement in the case. Had the case gone to trial and the State won a conviction, the petitioner faced a life sentence, with fifty-one years in prison before he would have been eligible for parole. Trial counsel said that he was thoroughly prepared to go to trial at the time that the petitioner entered his plea of guilty, and did not believe that he had left undone anything that should have been done in the case.

Trial counsel testified that the petitioner did not express any hesitation about accepting the State's offer when he first presented it to him, but that on the day that he was to enter the plea, there had been "great reluctance on his part about whether to go forward with taking the plea." The petitioner ultimately decided to sign the plea agreement documents, however, and did not hesitate at all during his colloquy with the court at the guilty plea hearing.

On December 18, 2000, the post-conviction court entered an order denying the petition. The court found that trial counsel "performed conscientiously in his representation of the petitioner," and was a "very competent criminal defense attorney whose representation of petitioner was well within the range of competence demanded of criminal defense attorneys." The court further found that the petitioner was sufficiently advised of his constitutional rights, and voluntarily and knowingly entered into his guilty plea, after fully discussing the options available to him with his family and trial counsel. Thereafter, the petitioner filed a timely appeal to this court.

## ANALYSIS

The sole issue raised by the petitioner on appeal is whether the post-conviction court erred in finding that he received effective assistance of trial counsel. The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence in the record preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). The post-conviction court's conclusions of law, however, are reviewed purely *de novo*. Burns, 6 S.W.3d at 461. The issue of ineffective assistance of counsel presents mixed questions of law and fact and is therefore reviewed *de novo*, with a presumption of correctness given to the post-conviction court's findings of fact. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns, 6 S.W.3d at 461.

In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). To succeed on a claim of ineffective assistance of counsel, the petitioner bears the burden of showing both that his counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of the proceeding. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires

showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065, and Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). When analyzing a petitioner's allegations of ineffective assistance of counsel, this court must indulge in a strong presumption that the conduct of counsel fell within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless they were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The prejudice prong of the test is satisfied by showing a "reasonable probability" that the outcome of the proceeding would have been different had it not been for deficiencies in counsel's performance. Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. When a petitioner's ineffective assistance claim is made in the context of a conviction stemming from a guilty plea, he must prove a reasonable probability that were it not for deficiencies in his counsel's performance, he would not have pled guilty, but instead would have insisted on going to trial. See Shazel v. State, 966 S.W.2d 414, 416 (Tenn. 1998) (citing Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370-71, 88 L. Ed. 2d 203 (1985)). "In cases involving a guilty plea or plea of nolo contendere, the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1998) (citing Hill, 474 U.S. at 59, 106 S. Ct. at 370, and Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991)).

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

On appeal, the petitioner bases his claim of ineffective assistance on trial counsel's alleged failure to inform him of the law regarding accomplice testimony. He asserts that had trial counsel informed him that the State's witnesses could be considered as accomplices, and that he could not be convicted on their testimony alone, he would not have entered his plea of guilty, but instead would have insisted on going to trial. After a careful review of the record, we conclude that there is no merit to the petitioner's claim.

A criminal defendant in Tennessee cannot be convicted solely on the uncorroborated testimony of an accomplice. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). An accomplice is defined as one who "knowingly, voluntarily, and with common intent participates with the principal offender in the commission of the crime alleged in the charging instrument." State v. Griffis, 964

S.W.2d 577, 588 (Tenn. Crim. App. 1997). The test for determining whether a witness is an accomplice is whether the witness could be indicted for the same offense as the defendant. See State v. Green, 915 S.W.2d 827, 831 (Tenn. Crim. App. 1995); State v. Lawson, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990). If the evidence shows that a witness's participation in the crime was the result of force, coercion, duress, or undue influence, then the witness is not an accomplice. Green, 915 S.W.2d at 831 (citing Henley v. State, 489 S.W.2d 53 (Tenn. Crim. App. 1972)).

When the evidence is clear and undisputed that a witness participated in the crime, then the trial court must declare the witness to be an accomplice as a matter of law, and instruct the jury that the witness's testimony must be corroborated. Lawson, 794 S.W.2d at 369. On the other hand, when the evidence is unclear, it becomes a question of fact for the jury to determine whether the witness is an accomplice, and, if so, whether there is corroborating evidence to support the witness's testimony. Id.; see Green, 915 S.W.2d at 831-32. "Where the facts raise a sufficient question of duress or necessity that were the alleged accomplice on trial, the trial court would be required to instruct the jury on the defense of duress or necessity, the question of whether a participant is an accomplice becomes a question of fact for the jury." Green, 915 S.W.2d at 831-32 (citations omitted).

There was no evidence in this case to support the conclusion that the witnesses were accomplices as a matter of law. Apparently, they were never indicted for the crimes. Trial counsel testified that although he had "some real questions" about the witnesses' roles in the case, the State had taken the position that they were victims whose presence at the crime scene, and silence afterwards, were coerced, and he was unable to uncover any evidence to show otherwise. Thus, he had concluded that whether or not they were accomplices would be a question of fact for the jury to determine, rather than a question of law. His defense strategy, therefore, had been to attack their credibility, and to present a quasi-alibi for the petitioner, in the form of testimony by his girlfriend of his usual routine, and that his car had been in the repair shop during the period in question.

During the evidentiary hearing, trial counsel initially testified that he could not say with absolute certainty whether he had gone over the legal issue of accomplice testimony with the petitioner. At a later point, however, he testified that he *did* specifically recall discussing with the petitioner the possibility that the State's witnesses could be considered as accomplices and the implications that that would carry. Further, trial counsel testified that the State had provided open discovery, that he had reviewed all of the evidence with the petitioner, and that the petitioner had been "well aware" that his defense strategy was to attack the credibility of the witnesses.

The post-conviction court found that the petitioner's trial counsel was not ineffective. We cannot conclude that the trial court erred in this finding. The petitioner has failed to meet his burden of demonstrating deficient performance on the part of trial counsel, or that he was prejudiced by counsel's alleged failure to inform him of the law on accomplice testimony.

Furthermore, although not raised on appeal, we also conclude that the record supports the post-conviction court's finding that the petitioner entered his guilty plea voluntarily and knowingly. The petitioner's claim of ineffective assistance of counsel necessarily implicates the voluntariness of his

-6-

guilty plea. A claim of ineffective assistance of counsel in the context of a guilty plea conviction is "only relevant to the degree that it shows that [the] plea of guilty was not knowing and voluntary." Housler v. State, 749 S.W.2d 758, 760 (Tenn. Crim. App. 1988) (citing Sherrod v. State, 567 S.W.2d 482 (Tenn. Crim. App. 1978)). When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542. The standard is the same for a "best interest" or Alford plea, that is, "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

The transcript of the guilty plea hearing reveals that the trial court carefully and correctly informed the petitioner at length regarding his constitutional rights, and specifically asked if he understood that he was waiving those rights by pleading guilty. The petitioner responded in the affirmative. Further, he stated that he understood the plea agreement and the significance of the guilty plea hearing, and was entering his best interest guilty plea voluntarily. We conclude, therefore, that the evidence shows that the petitioner's guilty plea was knowing and voluntary.

## **CONCLUSION**

Based on the foregoing reasoning and authorities, we affirm the post-conviction court's dismissal of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE