# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 27, 2001

## STATE OF TENNESSEE v. MARTHIAS S. PHILLIPS and LANARD KEITH ARMSTRONG

**Direct Appeal from the Criminal Court for Davidson County**
**No. 97-C-1833    J. Randall Wyatt, Jr., Judge**

---

**No. M2000-02575-CCA-R3-CD - Filed September 27, 2002**

---

A Davidson County jury found the defendants, Marthias S. Phillips and Lanard Keith Armstrong, guilty of facilitation of first-degree murder, criminal attempt to facilitate especially aggravated kidnapping, and criminal attempt to facilitate especially aggravated robbery. The trial court sentenced both defendants to serve 4-year sentences for their criminal attempt to facilitate especially aggravated kidnapping convictions, 4-year sentences for their criminal attempt to facilitate especially aggravated robbery convictions, and 20-year sentences for their facilitation of first-degree murder convictions. The trial court sentenced both defendants as Range I offenders and ordered them to serve their 4-year sentences for criminal attempt to facilitate especially aggravated kidnapping concurrently to their 20-year sentences for facilitation of first-degree murder. The court then ordered them to serve their 4-year sentences for criminal attempt to facilitate especially aggravated robbery consecutively to their concurrent 20-year sentences, resulting in an effective sentence of 24 years. The defendants now bring the instant appeal. Defendant Armstrong and Defendant Phillips both challenge the sufficiency of the evidence to support their convictions, the propriety of the trial court's jury instructions, and the effectiveness of their trial counsel. Defendant Armstrong additionally challenges the propriety of his sentence. After thoroughly reviewing the record and applicable law, we find that none of these allegations merit relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ. , joined.

Sam E. Wallace, Jr., Nashville, Tennessee for appellant, Marthias S. Phillips, and Dianne Turner, Nashville, Tennessee for appellant, Lanard Keith Armstrong.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, District Attorney General; Bret Gunn and Katrin Miller, Assistant District Attorneys General, for appellee, State of Tennessee.

# OPINION

## Factual Background

Dee Martin, a female friend of the victim, began discussions with Andre Kirby, Ronald Benedict, Learice Thomas, Defendant Armstrong, and Defendant Phillips about planning the robbery of the victim, a drug-dealer who kept drugs and large sums of money in his house. These six individuals were all members of the "Folks" gang. They developed a plan in which Martin would contact the victim and ask him for a ride home from work, and once the victim agreed and was dropping Martin off at her apartment, the others would force the victim to go back to his apartment where they would rob him.

On December 20, 1996, these six individuals acted on their plans to rob the victim. They met at Martin's apartment and discussed their plan. Benedict's role was to secure the victim's car and drive it to the victim's apartment. Defendant Armstrong gave Benedict a .32 revolver that had been kept at the apartment, and Benedict also collected a scarf and a glove from the apartment. When Benedict returned to the apartment later that night, he met Defendant Phillips, Defendant Armstrong, and Thomas, who were wearing dark clothes and ski masks while walking out the back door of the apartment. He recognized Defendant Phillips by his voice and Defendant Armstrong and Thomas by their height and build.

Martin called the victim and arranged to have him pick her up from her workplace. She then called Kirby and notified him that the victim was en route to pick her up. The victim and his girlfriend, Mabel Moore, picked up Martin at approximately 9:15 p.m. Martin claimed that she wanted to call off their plan to rob the victim because the victim was not alone, but was with Moore. When the victim stopped off in the Tennessee Village to speak with someone there, Martin called Kirby and attempted to call off the robbery. Once Martin, Moore, and the victim arrived at Martin's apartment, Martin and the victim exited the car. Martin screamed as five men approached them. Martin testified that all of the men were wearing coats and that Defendant Phillips was wearing a black trench coat and Defendant Armstrong was wearing a baseball cap. Defendant Phillips, armed with a shotgun that Martin had seen in her apartment, told the victim to "brace himself." The victim then began running, and Defendant Phillips, Defendant Armstrong, and Thomas chased him. At some point thereafter, the victim was shot and killed.

While the defendants and Thomas chased the victim, Benedict, who was wearing a coat, mask, and gloves, jumped into the victim's car, which Moore had been driving. He pointed a gun at Moore and ordered her to drive "under a bridge, over by the railroad tracks, you know, like on a dirt road." Benedict then ordered Moore out of the car, and as he was getting out of the passenger door, Moore drove away. Benedict then began shooting at the retreating car. Benedict dumped his clothes in a garbage can located on the Fisk University campus. An off-duty police officer who was working as a Fisk University security guard stopped Benedict, discovered that he had no outstanding warrants, and therefore released him. Moore later identified some gloves, a ski mask, and a Raider's jacket recovered from that garbage can as being similar to those worn by Benedict.

After the shooting, Defendant Phillips told Benedict that he and the victim had struggled over the shotgun and that the shotgun had fired into the victim's stomach. However, Defendant Armstrong told Benedict that Defendant Phillips and the victim struggled for the gun and that the

victim had the gun to Defendant Phillips's throat. Defendant Armstrong then "ma[d]e a decision whether it would be [Defendant Phillips] or [the victim]." Rodney Earl Jones, who claimed to have been present during discussions about the planned robbery but not participating in those discussions, testified that Defendant Phillips told him that he shot the victim when the victim reached for his gun and that Defendant Armstrong told him that he had shot the victim while the victim and Defendant Phillips were struggling for Phillips's gun.

Meanwhile, when Martin heard the gunshots, she retreated to her apartment. Defendant Armstrong advised her not to go back outside, and 10 to 15 minutes later, Benedict and Defendant Phillips returned to the apartment, as well. Approximately 30 to 35 minutes after Martin arrived at her apartment, the group finally left the apartment through the back door.

Victoria Anderson witnessed the victim's shooting. She saw the victim surrounded by three men and a fourth man standing near the side of her apartment building. She heard two shots, the first of which hit an air conditioner near her and the second of which hit the victim. She saw the victim fall after being shot and watched his attackers run away. Anderson then called the police, walked outside, and covered the victim with a blanket.

Detective Clifford Mann interviewed Martin several hours after the shooting, in which she finally admitted to some limited knowledge of the murder. In her second interview, Martin confessed to her involvement in the instant crime.

Police officers recovered a spent shell casing from the crime scene and bullet fragments from the victim. They determined that the shell casing was fired from a rifle and that the bullet fragments were fired from a pistol or a rifle. The medical examiner who performed an autopsy on the victim testified that the victim died of a gunshot wound to the chest, and that the wound was consistent with having been fired from an assault rifle.

All six individuals who were involved in planning the victim's robbery, Benedict, Thomas, Kirby, Martin, Defendant Armstrong, and Defendant Phillips, were indicted for their involvement in the resulting events. Defendant Armstrong and Defendant Phillips were tried jointly, and Martin and Benedict testified for the state at their trial. As aforementioned, a jury found the defendants guilty of facilitation of first-degree murder, criminal attempt to facilitate especially aggravated kidnapping, and criminal attempt to facilitate especially aggravated robbery, for which they each received an aggregate twenty-four year sentence. The defendants now bring this appeal, both challenging the sufficiency of the evidence to support their convictions, the propriety of the jury instructions, and the effectiveness of their counsel at trial. Defendant Armstrong also alleges that the trial court improperly sentenced him. For the reasons below, we conclude that their allegations do not merit relief.

## Sufficiency

The defendants' allege that the evidence introduced at trial is insufficient to support their convictions for facilitation of first-degree murder, criminal attempt to facilitate especially aggravated kidnapping, and criminal attempt to facilitate especially aggravated robbery. We first note that Defendant Armstrong has waived this issue by failing to support his argument with any references to authority or to the record. See Tenn. R. Ct. Crim. App. 10(b). Therefore, we will address only Defendant Phillips's sufficiency challenge.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" state's witnesses and resolves all conflicts in the testimony in favor of the state. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the state "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Tilson, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Id. at 779.

The defendants were both convicted of facilitation of first-degree felony murder, criminal attempt to facilitate especially aggravated kidnapping, and criminal attempt to facilitate especially aggravated robbery. In order to support a conviction for facilitation of felony-murder, there must be evidence of the defendant's facilitation of a felony, the commission or attempted commission of the underlying felony, and a killing during the commission or attempted commission of that felony. "A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a). Felony murder is a form of first-degree murder, and it is defined as "[a] killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse or aircraft piracy." Tenn. Code Ann. § 39-13-202(a)(2).

In order to support a conviction for criminal attempt to facilitate especially aggravated kidnapping, there must be evidence of a criminal attempt, which is defined, in pertinent part, as follows:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a). Furthermore, to support this conviction, there must also be evidence of the defendant's facilitation of a felony, which is defined above, and that the defendant attempted to facilitate the crime of especially aggravated kidnapping, which is defined as a false imprisonment "accomplished with a deadly weapon or by a display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-305(a)(1). False imprisonment is defined as the "knowing removal or confinement of another so as to substantially interfere with the other's liberty." Tenn. Code Ann. § 39-13-302(a).

In order to support a conviction for criminal attempt to facilitate especially aggravated robbery, there must be evidence of criminal attempt and facilitation of a felony, which are both defined above, and especially aggravated robbery. Especially aggravated robbery consists of a robbery, which is defined as "the intentional or knowing theft of property from the person of another by violence or putting in fear," that is accomplished with a deadly weapon and in which the victim suffers serious bodily injury. Tenn. Code Ann. §§ 39-13-401, 403.

Defendant Phillips complains that the evidence "preponderates against the verdict" (1) because the state did not prove that the defendants committed or attempted to commit the felonies of especially aggravated kidnapping and especially aggravated robbery and therefore did not prove the commission of an underlying felony to support his felony murder conviction and (2) because the jurors must have found that Defendant Phillips did not have a criminally responsible intent, which is required to sustain a facilitation conviction. We will address each of Defendant Phillips's arguments in turn.

First, we address Defendant Phillips's contention that the state failed to prove the commission of an underlying felony to support his facilitation of felony murder conviction. However, as noted supra, felony murder is defined as "[a] killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse or aircraft piracy." Tenn. Code Ann. § 39-13-202(a)(2). The state introduced evidence that the defendants, armed and dressed in black, chased the victim at gunpoint. Apparently, the defendants were trying to gain control of the victim in order to carry out their plan of capturing the victim and forcing him to allow them entry into his house so that they could steal the drugs and large sums of money that he kept there. Furthermore, the state also introduced evidence regarding the way in which the victim was murdered. In one account of the events, Defendant Phillips shot the victim during a struggle over Phillips's gun, and in a second account, Defendant Armstrong shot the victim while witnessing Defendant Phillips and the victim struggle over Phillips's gun. Based on this evidence, we believe that there was sufficient evidence for a jury to conclude (1) that a felony was committed, namely the especially aggravated kidnapping of the victim, (2) that the victim was killed during the commission of that felony, and (3) that Defendant Phillips either committed the felony murder himself, or was guilty of the lesser-included crime of facilitation of felony murder. See State v. Burns, 6 S.W.3d 453, 470 (Tenn. 1999) (holding that facilitation of first-degree murder is a lesser-included offense of first-degree murder); State v. Hicks, 835 S.W.2d 32, 35-36 (Tenn. Crim. App. 1992) (noting that although the evidence in this case supported a felony murder conviction, the jury instead convicted the defendant of the lesser-included offense of facilitation of felony murder, "a prerogative that the jury has under our system of justice and a right to which the accused is entitled"). Therefore, because we find that the evidence was sufficient to support a conviction for felony murder, Defendant Phillips's contention that the

evidence is insufficient to support his conviction for the lesser-included offense of facilitation of felony murder lacks merit.

Defendant Phillips also argues that the evidence is insufficient to support his facilitation of felony murder conviction because the jury found that he did not have a criminally responsible intent. As outlined above, criminal responsibility for the facilitation of a felony is defined as follows: "A person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a). Section 39-11-402 defines the crime of criminal responsibility for the conduct of another, and sub-section 39-11-402(2) enumerates one of the ways in which a person may be criminally responsible for the criminal conduct of another, namely by "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense [and] solicit[ing], direct[ing], aid[ing], or attempt[ing] to aid another person to commit an offense." Tenn. Code Ann. § 39-11-402(2). Defendant Phillips argues that because the jury charge included the above definition and because the jury found him guilty of facilitation based on these definitions, the jury found that he did not have a criminally responsible intent. Defendant Phillips further argues that "[w]ithout at least the amount of intent required for criminal responsibility for the conduct of another . . . there is a legally insufficient basis for holding a facilitator guilty of felony murder." We disagree.

Criminal responsibility for the facilitation of a felony is a lesser-included offense of criminal responsibility for the conduct of another. See State v. Fowler, 23 S.W.3d 285, 288 (Tenn. 2000). Specifically, an accused need not have the criminal intent required to sustain a conviction for criminal responsibility in order to be convicted of facilitation. See Tenn. Code Ann. § 39-11-403(a). As our supreme court stated when discussing the applicability of the facilitation statute, "[t]he Sentencing Commission Comments to section -403 state that application of the facilitation statute is appropriate where an offender participates substantially in a felony but lacks the intent to promote, assist or benefit from the offense." State v. Flemming, 19 S.W.3d 195, 199 (Tenn. 2000). Therefore, without finding that Defendant Phillips intended to promote, assist, or benefit from the commission of the crimes, the jury could have reasonably concluded that he was guilty of having facilitated the commission of those crimes if they determined that he knew that someone intended to commit a felony and knowingly furnished that person with substantial assistance in the commission of that felony. As discussed supra, we believe that based on the facts of this case, the jury could have reached such a conclusion. Thus, this issue lacks merit.

## Jury Instructions

Defendant Armstrong argues that the trial court erred by failing to instruct the jury that Rodney Jones, who testified against him at trial but was not indicted for any participation in the instant crime, was an accomplice as a matter of law or that the jury should decide whether Jones was an accomplice as a matter of fact. However, the trial court failed to grant Defendant Armstrong a new trial on this ground because it determined that Defendant Armstrong waived the issue by failing to ask for such a jury instruction.

The trial court correctly found that Defendant Armstrong waived this issue when he failed to request this jury instruction at trial. In State v. Anderson, 985 S.W.2d 9 (Tenn. Crim. App. 1997), this Court addressed a factually similar scenario, one in which the trial court failed to include any

accomplice instructions in the jury charge[1] and in which the defendant failed to make a request for an accomplice instruction. Ultimately, we found that the defendant waived the issue by failing submit such a request based on the following reasoning:

> [O]ur supreme court has held that an instruction on the rule requiring corroboration of an accomplice's testimony is not fundamental. Monts v. State, . . . 379 S.W.2d 34, 42 (Tenn. 1964); Arterburn v. State, . . . 344 S.W.2d 362, 364 (Tenn. 1961). Upon the trial court's failure to instruct the jury regarding accomplice testimony and the requirement of corroboration, it becomes the obligation of the defendant to make a special request for the instruction. Cole v. State, . . . 215 S.W.2d 824, 826 (Tenn. 1948); State v. Foster, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988). In the absence of a special request, the trial court does not err by failing to instruct the jury about accomplice testimony even if the circumstances of the case warrant such an instruction. Arterburn, . . . 344 S.W.2d at 364; Cole, . . . 215 S.W.2d at 826; State v. Blackwood, 713 S.W.2d 677, 681 (Tenn. Crim. App. 1986); State v. Copeland, 677 S.W.2d 471, 475 (Tenn. Crim. App. 1984); Bolton v. State, 591 S.W.2d 446, 448 (Tenn. Crim. App. 1979).

Anderson, 985 S.W.2d at 17-18. In the instant case, Defendant Armstrong similarly failed to make a special request for an accomplice instruction regarding Jones's testimony. Accordingly, he has waived this issue on appeal. See id. Furthermore, we do not find that there is a basis for concluding that Jones was an accomplice in the commission of the crimes at issue. An accomplice must do more than have guilty knowledge, be morally delinquent, or even in participate in a distinct but related offense. See State v. Lawson, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990); Pennington v. State, 478 S.W.2d 892, 898 (Tenn. Crim. App. 1971). The test for whether a witness is also an accomplice is whether that witness could have been convicted of the offense. Lawson, 794 S.W.2d at 369. While Jones was present during discussions in which the defendants and others planned to kidnap and rob the victim, he claims not to have participated in those discussions. Moreover, there is no other evidence linking him to the instant crimes. Therefore, we find that the trial court did not err by failing to instruct the jury that Jones was an accomplice as a matter of law or that they could determine that he was an accomplice as a matter of fact.

Defendant Phillips contends that the trial court erred by instructing the jury on flight, arguing that there was no evidence to support a finding that he left the jurisdiction in order to avoid prosecution. However, Defendant Phillips has waived this issue by failing to make appropriate citations to the record or supporting authority in his argument. See Tenn. R. Ct. Crim. App. 10(b). Regardless of the defendant's waiver, we find that the trial court's flight instruction was proper because there is evidence in the record to support a finding that Defendant Phillips fled the jurisdiction shortly after the commission of the instant crimes. Specifically, he traveled to Indiana on December 22 or 23, 1996 for a period of seven or eight days, which was a period of time shortly after the commission of the crimes on the evening of December 20, 1996. Moreover, the trial court informed the jury that if they were to determine that Defendant Phillips fled the jurisdiction, the jury could not base a verdict of guilt solely on that finding. Therefore, we find that the trial court did not err by instructing the jury on the issue of flight.

---

[1] In the instant case, the trial court did inform the jury that Benedict and Martin were accomplices in the commission of the crimes at issue. Furthermore, the court gave them instructions regarding how to weigh the accomplice testimony.

**Effectiveness of Assistance of Counsel**

Defendant Armstrong and Defendant Phillips both complain that they received ineffective assistance of counsel during their trial. We first note that claims of ineffective assistance of counsel are generally more appropriately raised in a petition for post-conviction relief rather than on direct appeal. See State v. Carruthers, 35 S.W.3d 516, 551 (Tenn. 2000); see also State v. Anderson, 835 S.W.2d 600, 606 (Tenn. Crim. App. 1992) ("Raising issues pertaining to the ineffective assistance of counsel for the first time [on direct appeal] in the appellate court is a practice fraught with peril."). Generally, a post-conviction petition hearing provides a forum where an accused can build an evidentiary basis demonstrating the ineffectiveness of his or her counsel. See Kirby George Wallace v. State, No. 01C01-9308-CCA-00275, 1994 Tenn. Crim. App. LEXIS 591, at *3 (Tenn. Crim. App. at Nashville, Sept. 15, 1994) ("[P]roceeding on an ineffectiveness claim without an evidentiary hearing makes it practically impossible to demonstrate prejudice as required in ineffective assistance claims.").

With that caveat, we further note that when a defendant seeks relief on the basis of having received ineffective assistance of counsel, the defendant bears the burden of showing that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). In order to demonstrate deficient performance, the defendant must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In order to demonstrate prejudice, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984).

A claim of ineffective assistance of counsel is a mixed question of law and fact and subject to de novo review; however, a trial court's fact-findings are subject to a de novo review with a presumption of correctness. See Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Conclusions of law are subject to a de novo standard of review. See id. Furthermore, an appellate court may neither re-weigh nor re-evaluate the evidence or substitute its own inferences for those drawn by the trial court. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997).

Defendants Armstrong and Phillips both complain that their counsel ineffectively represented them by failing to request a jury instruction regarding Rodney Earl Jones's role in the instant crime as their accomplice. However, Defendant Phillips has waived this issue by failing to include it in his motion for new trial. See Tenn. R. App. P. 3(e). The trial court stated in its order denying the defendants' motions for new trial that it did not find that the evidence introduced at trial could support a conclusion that Jones acted as an accomplice in the commission of the crime at issue. As discussed supra, we find no evidence in the record that would support a finding that Jones acted as the defendants' accomplice because the only evidence linking him to the instant crime is his own testimony that he was present during discussions about the planning and commission of the crimes but did not participate in those discussions. This evidence is insufficient to support a finding that Jones acted as an accomplice. See State v. Lawson, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990) (stating that in order to be an accomplice, a person must be more than someone who merely "has guilty knowledge or is morally delinquent, or who was even an admitted participant in a distinct but related offense"). Accordingly, we find that defendants' counsel did not provide deficient representation by failing to request an accomplice instruction regarding the witness Jones.

Defendant Armstrong also argues that his counsel provided him with deficient representation because his counsel failed to call two alibi witnesses to testify at trial. However, Defendant Armstrong has waived this issue by failing to make any citations to authority or to the record in support of his argument. See Tenn. R. Ct. Crim. App. 10(b). Furthermore, we agree with the trial

court that Defendant Armstrong has failed to demonstrate how he was prejudiced by his counsel's failure to call these witnesses. He did not offer these witnesses' testimony at the motion for new trial hearing, and thus we have no way of determining how Defendant Armstrong would have been exculpated by their testimony. See Black v. State, 794 S.W.2d 753, 757 (Tenn. Crim. App. 1990) (stating that an accused who alleges that his counsel provided deficient representation by failing to call a witness at trial should present that witness's testimony at an evidentiary hearing). Accordingly, we find that defendant Armstrong has failed to show that he was deficiently represented. Thus, this issue lacks merit.

## Sentencing Challenge

Defendant Armstrong alleges that the trial court improperly ordered his sentence for criminal attempt to facilitate especially aggravated robbery to run consecutively to his other two convictions, facilitation of felony murder and criminal attempt to facilitate especially aggravated kidnapping. "When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Id.

A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4). However, before sentencing the defendant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes and necessary to protect the public against further criminal conduct. See State v. Imfeld, 70 S.W.3d 698, 708-09 (Tenn. 2002); State v. Wilkerson, 905 S.W.2d 933, 938-39 (Tenn. 1995). The trial court found that Defendant Armstrong was a dangerous offender and accordingly ordered him to serve his sentence for criminal attempt to commit especially aggravated robbery consecutive to his other two sentences.

Defendant Armstrong argues that the trial court erred by finding him to be a dangerous offender because "[t]here was no evidence other than that adduced at trial" upon which to base a finding that Defendant Armstrong was a dangerous offender and thus a candidate for consecutive sentencing. However, the circumstances surrounding a criminal episode are proper considerations for determining whether to sentence a defendant to serve his convictions stemming from that episode consecutively. See, e.g., Imfeld, 70 S.W.3d at 708-09. In the instant case, the trial court stated that the planning and commission of the attempted especially aggravated robbery indicated that the defendants had little or no regard for human life and no hesitation about committing a crime where the risk to human life was high. The trial court noted the facts that the defendants were heavily armed and wearing ski masks in support of this finding. The trial court also noted that the victim's murder was a brutal one, as he was ambushed, chased at gunpoint, and then shot and killed.

Considering these factors and that the defendants would serve only a portion of their sentences due to their status as Range I offenders, the trial court ordered the defendants to serve their sentence for criminal attempt to facilitate especially aggravated robbery conviction consecutive to their other two sentences, finding that the resulting sentence of 24 years would be appropriately related to their crimes. We find that this analysis was sufficient to satisfy the requirement of a finding that the consecutive sentence is sufficiently related to the severity of the crime and necessary to protect the public from the defendant's further criminal activity. Therefore, we find that the trial court appropriately sentenced Defendant Armstrong. Thus, his sentencing challenge lacks merit.

### Conclusion

For the foregoing reasons, we find that none of the defendants' allegations merit relief. Accordingly, the judgment of the trial court is AFFIRMED.

_____
JERRY L. SMITH, JUDGE