# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned On Briefs August 2, 2011

## STATE OF TENNESSEE v. DEWAYNE COLLIER a/k/a PATRICK COLLIER

**Appeal from the Criminal Court for Shelby County**
**No. 09-04165     John T. Fowlkes, Jr., Judge**

---

**No.  W2010-01606-CCA-R3-CD  - Filed July 11, 2012**

---

Following a Shelby County jury trial, the Defendant, DeWayne Collier, was convicted of aggravated statutory rape.  At the time of the crime, the Defendant was forty-two years old and the victim was fourteen years old.  The trial court sentenced the Defendant to four years as a Range II, multiple offender.  On appeal, the Defendant argues that the trial court erred in denying his motion for judgment of acquittal and that the evidence was insufficient to support his conviction because the fourteen-year-old victim was an accomplice and there was not sufficient corroborating evidence.  After a thorough review of the record on appeal, we conclude that the victim is legally an accomplice regardless of the fact that she cannot be indicted for her own statutory rape.  However, we also determine that there is additional evidence to adequately corroborate her testimony.  Therefore, we conclude that the evidence is sufficient to support the Defendant's conviction.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Phyllis Aluko, Assistant Public Defender, for the appellant, Dewayne Collier a/k/a Patrick Collier.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; and Damon Griffin, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. FACTS

On Friday September 5, 2008, the fourteen-year-old victim, C.D.[1], was scheduled to perform with the Earle High School band at a football game. C.D. lived and went to school in Arkansas not far from the Tennessee border. After school she went to her friend's house. While there, she called the Defendant using the cellphone that belonged to her friend's mother. C.D. asked the Defendant to pick her up and take her to his house. C.D. did not have permission to go to the Defendant's house. The Defendant told C.D. he was at work, but that it would not be long before he could pick her up. They determined that he should pick her up at the YM convenience store.

C.D. waited fifteen minutes and told her friend that an uncle was going to pick her up at the YM convenience store. The walk from her friend's house to the store was about three minutes. On her way to the store, C.D. ran into her ex-boyfriend. He walked her the rest of the way to the store. When they arrived, the Defendant was already at the store. The Defendant had her get into his red pick-up truck. It was about 5:00 p.m.

The Defendant teased the victim about her ex-boyfriend and asked if she and the boy were boyfriend and girlfriend. She told him they were just friends. The Defendant stopped at a liquor store and bought twelve small bottles of margaritas. C.D. remained in the car. According to C.D., it took about forty minutes to get from the YM convenience store to the Defendant's duplex in Memphis.

The victim described the Defendant's residence. She said it was a brick duplex with a black screen door. The point of entry lead into the kitchen which had a washer and dryer and a sink located in the back.

When they arrived, the Defendant opened one of the margarita bottles, and the Defendant and the victim took a bath together. The bath lasted about thirty minutes. C.D. got dressed in a white tank top that the Defendant gave her to wear. They went into the bedroom, drank the margaritas and began to talk. C.D. noticed that there were pictures of children on the Defendant's dresser. She asked the Defendant if he was married and had children. The Defendant told her he was not married and did not have any children.

---

[1] It is the policy of this Court to refer to victims of sexual crimes and their family members by their initials.

C.D. described the Defendant's appearance. She said that he had a tattoo of a panther high on his chest. She said the tattoo was placed to cover a scar. She also stated that he had scars on his back from a motorcycle accident. She said that she knew he was over twenty years of age but did not know his exact age.

After lying and talking on the bed for fifteen or twenty minutes, the Defendant and C.D. had sexual intercourse. C.D. stated that the Defendant wore a condom. The two of them drank the rest of the margaritas, and the Defendant ordered some food from a restaurant on Beale Street. The Defendant and C.D. went to pick up the food. They could not eat at the restaurant because the victim was underage.

When they arrived back at the Defendant's house, the victim said it was late at night. They ate their supper and watched a John Wayne movie on television. After the movie, they had sexual intercourse for a second time on the Defendant's bed. They "washed up" and stayed awake for about thirty minutes before going to sleep in the Defendant's bed.

They woke up around 7:00 a.m. the next morning. When they awoke, they had sexual intercourse for a third time. This time the Defendant did not wear a condom. At 10:00 or 11:00 a.m., the Defendant's brother knocked on the door. The Defendant refused to answer the door. The Defendant's brother went to the bedroom window and knocked on it. C.D. ran to the second bedroom. The Defendant's brother did not come into the house, and the Defendant did not go outside to see his brother.

After his brother left, the Defendant told C.D. that she could return to the bedroom. The Defendant placed C.D. on the bed, and they had sexual intercourse for a fourth time. C.D. washed with a small face towel. The Defendant washed C.D.'s clothes. C.D. stated that the Defendant did not ejaculate inside her, but instead ejaculated on her stomach.

C.D. testified that she attempted to call her mother, but her mother had the calls blocked. When she could not get in touch with her mother, C.D. told the Defendant that he should wait to take her home until dark. She said that her father worked outside of the house until sundown, and she thought it would be best to get home when her father was inside.

The Defendant took the victim home after dark. He dropped her off at the end of her driveway. The Defendant told her that he was going to spend the night at his brother's house.

While C.D. was at the Defendant's house, her mother, S.D., began searching for her. S.D. went to the football game on Friday night, but she was unable to locate C.D. When C.D. did not come home Friday night, S.D. assumed that C.D. spent the night with a friend. On Saturday morning, C.D. did not come home. At this point, S.D. began calling C.D.'s

friends and driving around town looking for C.D. Between 10:00 and 11:00 a.m., S.D. called the police. S.D. told the police that she had not seen C.D. since she left for school on Friday morning. The police told S.D. they would put out an Amber Alert for C.D. S.D. became hysterical.

S.D. and her sister drove around town to look for the victim some more. They spoke with the owner at the YM convenience store. He recalled seeing C.D. at the store, but he had no information regarding C.D.'s whereabouts.

S.D. testified that C.D. arrived home between 9:00 and 10:00 p.m. on Saturday evening. She did not see how C.D. got home. C.D. testified that when she arrived home she was met by her father, mother, and brother. Her mother was crying and began asking her where she had been. According to C.D., she lied and told her mother she had been at a friend's house. C.D. lied because she did not want to get the Defendant in trouble. According to S.D., C.D. refused to tell her how she got home and went straight to her room.

S.D. called the police to let them know that C.D. had arrived home safely. Officers arrived shortly thereafter to determine what had happened to C.D. They took C.D. outside to the police car and put her in the back. She told the officers that she had been with the Defendant. S.D., who was in the front seat of the police car, had to step out of the car because she became so upset.

After speaking with the officers, C.D. was taken to Crittenden Memorial Hospital. At the hospital, a nurse conducted tests to complete a rape kit. She took both vaginal and oral swabs and collected C.D.'s clothing. C.D. told the nurse that the panties she gave her were the ones she had been wearing all weekend.

On September 11, 2008, C.D. gave a statement to Lieutenant Evertina Halfacre, an officer with the Sex Crimes Unit of the Memphis Police Department. The victim stated that she and the Defendant took a bath. After the bath she wore house shoes, a bra, panties, a pair of shorts, and a shirt. On the same date, C.D. identified the Defendant in a photographic lineup as the person with whom she had sexual intercourse. After speaking with C.D. and her father, Lieutenant Halfacre learned how to locate the Defendant. The victim's father grew up with the Defendant, and the Defendant had been to the victim's house. C.D. told Lieutenant Halfacre that the Defendant was forty-two years old, and Lieutenant Halfacre was able to verify the Defendant's age.

As a result of the statement and identification, a warrant was issued to search the Defendant's home. However, Lieutenant Halfacre was unable to locate the Defendant for five days. He returned home on September 17, 2008. The Defendant was irate when he

returned home and refused to cooperate with police. He denied that he had had sexual intercourse with C.D.

Lieutenant Halfacre stated that C.D.'s description of the Defendant's home was accurate. C.D. told Lieutenant Halfacre that the Defendant lived in a duplex. The Defendant lived next door to his brother. C.D. told Lieutenant Halfacre that the Defendant had photographs of children on the walls of the house. Lieutenant Halfacre testified that C.D. described the floral comforter that was on the Defendant's bed very accurately. She also described a television set in the room in which they had sexual intercourse. C.D. also described the bathroom as having black and white tile and a black shower curtain. Lieutenant Halfacre also stated the C.D. accurately described the layout of the kitchen, the color and location of the sofa, and the location of the face towels. Lieutenant Halfacre took the comforter and sheets from the bed as well as the towels from the bathroom.

Lieutenant Halfacre identified the Defendant at trial. The day after his home was searched, the Defendant presented himself at the police station and was arrested.

The Defendant presented three witnesses at trial. Tim Chandler is the vice president of finance and the record keeper at Chandler Demolition Company, the Defendant's place of employment on the date in question. He testified that on September 5, 2008, the Defendant worked from 7:00 a.m. to 4:00 p.m. The Defendant was working at the Levy Road Landfill and was responsible for closing the landfill and locking the gate when all the employees were gone. Afterwards, the Defendant returned to company headquarters to clock out and get his paycheck. This took about ten minutes.

Willie Crump was the Defendant's co-worker. On September 5, 2008, he and the Defendant went to cash their paychecks shortly after 4:00 p.m. The Defendant drove Mr. Crump home after they cashed their paychecks. Mr. Crump said the Defendant left his house around 4:30 p.m.

Qadriyyah Debnam, is a forensic analyst with the Tennessee Bureau of Investigation ("TBI"). She examined the rape kit submitted for C.D. She examined a blood sample from C.D., vaginal swabs, oral swabs, C.D.'s underwear and clothing. Ms. Debnam also examined a saliva sample from the Defendant and a bed sheet. There was no semen found on the bed sheet, the vaginal swabs, oral swabs, C.D.'s panties, bra, or shirt. Ms. Debnam found semen in the crotch area of C.D.'s jeans. There was no sperm. Ms. Debnam could not determine when the semen would have been deposited on the jeans. She stated that semen can remain on clothing even after the item of clothing has been washed.

On July 7, 2009, the Shelby County Grand Jury indicted the Defendant for aggravated statutory rape. Following a jury trial, held on June 3, 2010, the Defendant was convicted as charged. The trial court sentenced the Defendant to four years as a Range II, multiple offender. The Defendant appeals his conviction.

## II. ANALYSIS

### A. Denial of Motion for Judgment of Acquittal

The Defendant argues that the trial court erred in denying his motion for judgment of acquittal at the close of the State's proof and at the close of the Defendant's proof. The State argues that the issue is waived because the Defendant offered evidence after the denial of his motion.

According to Tennessee Rule of Criminal Procedure 29(b):

> On defendant's motion or its own initiative, the court shall order the entry of judgment of acquittal of one or more offenses charged in the indictment, presentment, or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

This Court has noted that "[i]n dealing with a motion for judgment of acquittal, unlike a motion for a new trial, the trial judge is concerned only with the legal sufficiency of the evidence and not with the weight of the evidence." *State v. Hall*, 656 S .W.2d 60, 61 (Tenn. Crim. App. 1983). The standard for reviewing the denial or grant of a motion for judgment of acquittal is analogous to the standard employed when reviewing the sufficiency of the convicting evidence after a conviction has been imposed. *State v. Ball*, 973 S.W.2d 288, 292 (Tenn. Crim. App. 1998); *State v. Adams*, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995).

The law of this state is that the Defendant waives any error by a trial court in denying a motion for a judgment of acquittal at the conclusion of the State's proof if the defendant goes on to introduce evidence following the denial of his motion. *Finch v. State*, 226 S.W.3d 307, 316-18 (Tenn. 2007); *Mathis v. State*, 590 S.W.2d 449, 453 (Tenn. 1979). At the conclusion of the State's proof, the Defendant made a motion for judgment of acquittal. After hearing the Defendant's argument, the trial court denied the motion. The Defendant proceeded to present witnesses and evidence. For this reason, the Defendant has waived this issue with regard to the denial of his motion for judgment of acquittal at the conclusion of the State's proof.

As stated above, the standard for reviewing a judgment of acquittal is the same of that for sufficiency of the evidence. Below we address the Defendant's claims that the evidence was insufficient.

## B. Sufficiency of the Evidence

The Defendant argues that the evidence was insufficient to support his conviction for aggravated statutory rape because C.D. was an accomplice and the State did not present corroborating evidence.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *see also Liakas v. State*, 199 Tenn. 298, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *State v. Grace*,

493 S.W.2d 474, 479 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 219 Tenn. 4, 405 S.W.2d 768, 771 (Tenn. 1996) (citing *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000). Importantly, the credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the jury as the trier of fact. *Bland*, 958 S.W.2d at 659.

Generally, a defendant may be convicted upon the uncorroborated testimony of one witness. *Letner v. State*, 512 S.W.2d 643, 649 (Tenn. Crim. App. 1974). However, a conviction may not be based solely upon the uncorroborated testimony of an accomplice. *Monts v. State*, 214 Tenn. 171, 379 S.W.2d 34, 43 (Tenn. 1964); *State v. Green*, 915 S.W.2d 827, 830 (Tenn. Crim. App. 1995). "An accomplice is one who knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime." *State v. Allen*, 976 S.W.2d 661, 666 (Tenn. Crim. App. 1997). The victim of a sex offense may, in some circumstances, be an accomplice to the sex offense.[2] *See Shelley v. State*, 95 Tenn. 152, 31 S.W. 492 (Tenn. 1895); *State v. Scott*, 207 Tenn. 151, 338 S.W.2d 581 (Tenn. 1960); *State v. Ballinger*, 93 S.W.3d 881, 878-88 (Tenn. Crim. App. 2000). Though whether an individual is an accomplice to an offense generally depends on whether the individual could be indicted for the offense, whether a sex crime victim is an accomplice appears, under current law, to depend on whether the victim voluntarily consented to the sexual activity. *Scott*, 338 S.W.2d

---

[2] We note that, per Tennessee statute, a child sex abuse victim under age thirteen is not, under any circumstances, an accomplice to illicit sexual conduct. T.C.A. § 40-17-121 (2006).

at 583. A victim consenting in response to rape, force, threats, fraud, or undue influence, however, does not voluntarily consent to the sexual conduct and is not an accomplice thereto. *Id.* Though a victim's precise role in an episode of sexual abuse is a factual determination, whether the role amounted to that of an accomplice is a question of law. *State v. Anderson*, 985 S.W.2d 9, 16 (Tenn. Crim. App. 1997).

In *State v. Jeffrey Edward Pitts*, a panel of this Court sharply criticized the rule subjecting victim testimony to accomplice scrutiny:

> We are perplexed as to how a "victim" can be an "accomplice" under any circumstance. The two terms are mutually exclusive under Tennessee law. A "victim" is statutorily defined as "the person alleged to have been subjected to criminal sexual conduct." Tenn. Code Ann. § 39-13-501(8) (1991). However, an "accomplice" is one who "knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime." *State v. Green*, 915 S.W.2d 827, 831 (Tenn. Crim. App. 1995) (emphasis added). Furthermore, the "test" to determine if a person is an accomplice to an offense is whether that person could be indicted for or convicted of that offense. *State v. Green*, 915 S.W.2d at 831; *State v. Lawson*, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990).

No. 01C01-9701-CC-00003, 1999 WL 144744, *5, footnote 7 (Tenn. Crim. App., at Nashville, Mar. 18, 1999), *perm. app. denied* (Tenn. Oct. 11, 1999). We share the *Pitts* panel's misgivings as to the cases classifying sex crime victims as accomplices.

In cases where, based upon his or her role in a sex offense, a victim could be indicted for the offense charged against the defendant, the victim clearly is an accomplice to the sexual conduct at issue. *See State v. John Jason Burda*, No. M2009-02523-CCA-R3-CD, 2009 WL 1181349, at *11 (Tenn. Crim. App., at Nashville, May 4, 2009) (victim in sexual exploitation of minor case held to be accomplice where she sent sexually explicit photographs of herself to defendant), *perm. app. denied* (Tenn. Nov. 23, 2009)). The 1895 case first subjecting sex victim testimony to accomplice scrutiny involved an uncle accused of committing incest with his niece. *See Shelley*, 31 S.W. at 493. Because the relationship endured over a nine-month period with no evidence of force, threats, fraud, or undue influence, the Court concluded that the niece, who also could be convicted of incest, was an accomplice. *Id.*

Where a victim's conduct is not itself illicit, however, the victim's complicity in sexual conduct is less obvious. In *Ballinger*, for example, a fifteen-year-old victim testified that her

-9-

adult neighbor had sex with her against her will, whereas the neighbor testified the sex was consensual. 93 S.W.3d at 885. This court held that a jury could reasonably conclude from the Defendant's testimony that the victim consented to the sexual activity and, thus, was an accomplice thereto. *Id.* at 887-88. In *Pitts*, however, this Court held that a mentally disabled male victim forced to perform oral sex upon his supervisor was not an accomplice to sexual battery primarily due to his mental defect but also due to his testimony that he engaged in the sexual conduct only because the defendant was his "boss" and he had been directed to do whatever his boss told him to do. 1999 WL 144744, at *6.

The Defendant's theory at trial was that he did not have sexual intercourse with the victim. We note the Defendant did not call the trial court's attention to his concerns with the victim's testimony. In choosing not to object to her testimony on this basis, he failed "to take whatever action reasonably necessary to prevent or nullify the harmful effect" of her testimony. *See* Tenn. R. App. P. 36(a). Such an objection, of course, would have been at odds with the Defendant's denial that any sexual intercourse took place. In choosing to pursue this course at trial and, as a result, refraining from raising an objection at trial to the uncorroborated "accomplice" testimony, the Defendant deprived the trial court of the opportunity to address the issue of accomplice testimony and, if the victim was an accomplice, the need for corroboration. Consequently, the Defendant waived review of whether the trial court erred when it placed no findings on the record as to whether the victim was an accomplice. *See* Tenn. R. App. P. 36(a). As such, we will address the Defendant's objection only as it relates to the sufficiency of the evidence supporting his conviction and not as it relates to the absence of findings as to whether the victim was an accomplice.

Under the current law, it appears that the victim in this case would legally be considered an accomplice to her own statutory rape. This is the case because the proof at trial demonstrated that she consented to have sexual intercourse with the Defendant. *See Scott*, 338 S.W.2d at 583. We point out that if the general rule based upon whether the individual could be indicted for the offense was the law in regard to these facts, the outcome would have been that the victim was not an accomplice. Clearly a fourteen-year-old victim cannot be indicted for aggravated statutory rape because she cannot be ten (10) years older than the statutory rape victim between the ages of thirteen (13) and eighteen (18).

Because it appears, under the current law, that she is an accomplice, this Court must determine whether there is sufficient evidence to corroborate her testimony. The law in Tennessee regarding accomplice testimony has been described as follows:

> The rule simply stated, is that there must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the

inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence.

*Shaw*, 37 S.W.3d at 903 (quoting *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994) (citations omitted). Whether sufficient corroboration exists is a determination for the jury. *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994).

Lieutenant Halfacre's testimony was sufficient corroboration of the victim's testimony. Lieutenant Halfacre investigated the accusations and searched the Defendant's home. When Lieutenant Halfacre searched the Defendant's house she discovered that the victim had accurately described both the layout and the decor of the Defendant's home. Lieutenant Halfacre testified about the layout of the house and the photographs of children on the wall about which the victim also testified. Lieutenant Halfacre also referenced the description of the floral comforter. As stated above, corroboration need only connect the Defendant with the crime and does not need to verify all aspects of the evidence presented. *See Shaw*, 37 S.W.3d at 903.

Now that we have determined there was sufficient corroboration of the victim's testimony, we now turn to whether the evidence was sufficient. Aggravated statutory rape is defined as, "the unlawful sexual penetration of a victim by the defendant, or of the defendant by the victim when the victim is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least ten (10) years older than the victim." T.C.A. § 39-13-506(c). The victim was the sole witness to the events at issue. The jury clearly found the victim to be credible. Questions of credibility are determined by the jury. *Bland*, 958 S.w.2d at 659. When the evidence is taken in the light most favorable to the State, it shows that the victim was fourteen years old and the Defendant was forty-two years old which is more than ten years older than the victim. Also, there was evidence presented of penetration of the victim by the Defendant when they had sexual intercourse.

For this reason, we conclude that there was sufficient evidence to support the Defendant's conviction.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE