STATE of Tennessee, Appellee,

v.

Otis LAWSON, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

April 17, 1990.

Permission to Appeal Denied by Supreme Court July 2, 1990.

B.C. McInturff, Kingsport, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Amy L. Tarkington, Asst. Atty. Gen., Nashville, Douglas Godbee, Asst. Dist. Atty. Gen., Rogersville, for appellee.

## OPINION

JAMES C. BEASLEY, Special Judge.

This is an appeal by Otis Lawson from his conviction for concealing stolen property over the value of Two Hundred Dollars ($200.00), for which he was sentenced to serve four years as a Range I standard offender.

In addition to challenging the sufficiency of the convicting evidence the defendant presents the following issues:

1. Whether the trial court erred in not dismissing the indictment;
2. Whether the court erred in denying his motion for a different venire;
3. Whether it was error to not grant his motion for a new trial on the basis that the widow of the defendant's first cousin was a member of the jury;
4. Whether the trial court erred in not charging the jury that Ann and Jeffrey Lawson were accomplices; and,
5. Whether the defendant was properly sentenced.

The Court finds no reversible error and affirms the judgment of the trial court.

In his first issue the defendant says the indictment against him should have been dismissed because he was not given a preliminary hearing prior to indictment and had not been "bound over."

From statements made at the hearing on the motion to dismiss, it appears that the defendant was first charged by presentment on May 11, 1987, in which it was stated that the offense occurred on November 10, 1986. On motion of the State an order nolle prosequi was entered dismissing the presentment. Subsequent to that dismissal, Detective Clevinger, the original prosecutor, appeared before the grand jury with the result that the present indictment was returned in which the date was corrected to read July 5, 1986, and a codefendant, Jimmy Kidd, was added. The defendant was arrested sometime later on a capias.

When an unconditional order nolle prosequi is entered after indictment, it is a dismissal of the indictment and no conviction can be had except by beginning a new case against the defendant. *State v. D'Anna*, 506 S.W.2d 200 (Tenn.Crim.App. 1973).

Contrary to the insistence of the defendant, this new indictment was not rendered null and void by the lack of a preliminary hearing or "bind over" order. In the first place there is no constitutional requirement for a preliminary hearing. *Vaughn v. State*, 557 S.W.2d 64 (Tenn. 1977). Secondly, the statutory provision for a preliminary hearing has no application here. In construing T.C.A. § 40–1131 (now Rule 5(e) Tenn.R.Crim.P.), the Supreme Court has held:

> It is our opinion that the statute, T.C.A., § 40–1131, entitles the defendant to a preliminary hearing only in proceedings which begin with the arrest, with or without a warrant, of the defendant; when proceedings begin with a presentment or an indictment without the accused being in custody or upon bail for the offense charged, the defendant is not entitled to a "preliminary"

hearing. *Harris v. State*, Tenn.Cr. App., 534 S.W.2d 868 (1975); *McCracken v. State*, Tenn.Cr.App., 529 S.W.2d 724 (1975). Nothing in the historical development of the preliminary hearing suggests a right to a post-presentment or post-indictment determination of probable cause by a magistrate, a determination already made by the grand jury. Our Constitution has lodged that ultimate authority with the grand jury. See Tennessee Constitution, Article I, Section 14. A re-determination of probable cause by a magistrate is not required. If the legislature intends that a "preliminary" hearing shall be afforded to the defendant when proceedings begin with a presentment or an indictment without the defendant being in custody or on bail for the offense charged, it will have to say so in clear and unmistakable terms. We hold that it has not said so in T.C.A., Sec. 40–1131 as it is now written.

Finally, in holding that a defendant was properly prosecuted on an indictment regardless of whether city judge had jurisdiction to bind defendant over to the grand jury, our Supreme Court pointed out that numerous cases are in the books and otherwise where defendants are prosecuted under indictments without being arrested prior to the return of the indictments; defendants are indicted after being released at a preliminary hearing; and in other cases defendants are prosecuted under indictments although the initial arrest was invalid. *Mullins v. State*, 214 Tenn. 366, 380 S.W.2d 201 (1964). *See also State v. D'Anna, supra*, where this Court said:

> In all criminal cases, prior to presentment and indictment, whether the charge be a misdemeanor or a felony, the accused shall be entitled to a preliminary hearing upon his request therefore [sic], whether the grand jury of the county be in session or not.

By the express terms of this statute, the right to a preliminary hearing only exists *prior to presentment or indictment.*

\* \* \* \* \* \*

Thus, after the return of the indictment by the Grand Jury, representing its finding of probable cause to believe that the defendant committed the offense charged therein, obviously a preliminary hearing to re-determine the same question was not required. *Shaw v. State*, 164 Tenn. 192, 47 S.W.2d 92.

As to the form of the charging instrument, we hold that it meets the constitutional and statutory requirements for a valid indictment.

The trial court was correct in denying the motion to dismiss this indictment. Thus, we find no merit to this issue.

 The defendant next claims that his constitutional right to an impartial jury was denied by the failure of the trial judge to summons a new and different venire for the instant case.

At a pretrial hearing on February 6, 1989, it was shown that the defendant was scheduled for trial February 8 on a charge of altering V.I.N. numbers on a motor vehicle and that the instant case was set for trial February 21.

In overruling the request for a special venire the trial judge stated:

I won't have all the jurors here the first time he's tried and I'll just admonish them not to discuss the case with any of the other jurors and then the other jurors will have no knowledge at all and I'll have none of those same ones come back for his next case.

The court then suggested:

Why don't you just ask them if they have ever heard of him before and if somebody has heard of him before, then I'll bring them up here to the bench and outside the presence of the other jurors, and we'll find out if they've heard anything about it. If they have, we'll let them go. I think I can protect ... I think that the jurors that try the second case will know nothing at all about the first case, period. If you can show me when the second jury is here that there is any problem with it, I'll be glad to do it, but I don't believe there will be any problem.

There was no suggestion during the selection of the jury for the instant case that any member thereof had any knowledge whatsoever about defendant's earlier trial nor has there been any showing since of such knowledge. In fact, this record reflects no specific objection to the jury actually selected prior to its being sworn. In renewing his earlier motion at the trial level and in his brief submitted to this Court, the defendant argues mere suspicion or the possibility that this jury had knowledge of his prior trial and could have been biased against him for that reason. Juror bias must be shown, not just suspected. *See Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The impartial jury guaranteed by constitutional provisions is one which is of impartial frame of mind at the beginning of trial, is influenced only by legal and competent evidence produced during trial, and bases its verdict upon evidence connecting defendant with the commission of the crime charged. *Houston v. State*, 593 S.W.2d 267 (Tenn. 1980). We find nothing in the record indicating that this jury was biased against the defendant nor is there any showing that it was other than impartial. The trial judge did not abuse his discretion in denying the request for a special venire.

 At the hearing on the motion for a new trial it was established through the testimony of the defendant's uncle that one of the jurors, Joyce Manis, was the widow of the defendant's first cousin. Defendant says this juror was disqualified under T.C.A. § 22–1–105 which provides:

No person can act as a juror in any case in which he is interested, or when either of the parties is connected with him by affinity or consanguinity within the sixth degree, computing by the civil law, except by consent of all the parties.

Neither the juror nor the defendant testified at the hearing, thus there was no proof as to whether either or both knew of the relationship. Nevertheless, the defendant insists that he is entitled to new trial due to the juror's statutory disqualification. We disagree.

Under well settled law in this State the apparent defect in question is considered a disqualification *propter defectum* which is deemed waived if no objection is entered prior to the swearing in of the jury. The waiver rule is applicable to prohibited relationships between a juror and one of the parties, despite the fact that a defendant has no knowledge of the defect at the time of the jury's selection. *State v. Elrod*, 721 S.W.2d 820 (Tenn.Crim.App.1986); *Murphy v. State*, 560 S.W.2d 414 (Tenn.Crim.App. 1977).

Furthermore, the defendant having failed to show that the juror was aware of the relationship or even knew the defendant, no prejudice can be shown.

Finally, our Supreme Court has held that a relationship by affinity is dissolved by the death of the party through whom the marriage created the prohibited relationship. *Goodall v. Thurman*, 38 Tenn. 209 (1858); *Wilson v. State*, 100 Tenn. 596, 46 S.W. 451 (1898). The proof shows the juror's husband had been dead several years. There is no merit to this issue.

Proof presented by the State shows that on July 3, 1986, it was discovered that a 1986 Camaro valued at $18,266.90 owned by Beaty Chevrolet was missing. On November 10, 1986, while executing a search warrant at the premises of Heiskell Lawson[1] in Hawkins County, Detective Clevinger recovered several parts from a 1986 I.R.O.C. Camaro automobile including two doors and a hatchback. The V.I.N. number on one of the doors was the same as the stolen vehicle. On December 8, 1986, Detective Clevinger searched the defendant's 1978 Camaro and found that it did not have wheels or a motor. Approximately two months later he saw the defendant's car with what appeared to be 1986 I.R.O.C. Camaro wheels on it.

Jeffrey Lawson, the twenty-year-old son of Heiskell and Ann Lawson, testified that after dark on July 4, 1986, he saw the defendant and Jimmy Kidd in the yard of his parents' home with a red and maroon Camaro. When he returned home he found two doors and a hatchback from a Camaro in the garage. He carried these parts to the basement and covered them with an old tarp. On cross-examination it was developed that as the result of being arrested while driving a stolen Ford truck in November, 1986, Jeffrey Lawson was on probation for concealing stolen property.

Mrs. Ann Lawson testified that around July 4, 1986, the defendant and Jimmy Kidd were at her house with a red Camaro I.R.O.C. She said her home was searched on November 10, 1986, as the result of her son being arrested driving a stolen vehicle. She denied any knowledge of the stolen property and said the charges against her were dismissed in general sessions court.

Heiskell Lawson testified that on or about July 4th or 5th Otis Lawson and Jimmy Kidd were at his Home. He was aware that the defendant and Kidd were working a deal for a red I.R.O.C. Camaro and he saw the defendant write a check. He said Kidd called two weeks later trying to locate the defendant because the check didn't clear the bank. Sometime later he saw a different set of wheels on the defendant's Camaro. It was developed on cross-examination that the witness along with his wife and son were charged with concealing stolen property after the son was arrested in a stolen Ford truck. In addition to the parts from the stolen Camaro, a stolen Honda motorcycle was recovered from the basement. The witness said he obtained the truck and motorcycle from Jimmy Kidd.

A copy of a check dated July 3, 1986, drawn on the account of the defendant's wife in the amount of $1,800 payable to Jimmy Kidd was introduced. The bank records reflect that this check cleared on July 8, 1986, and that a deposit of $1,800 was made to the account that same day.

Both the defendant and his codefendant, Jimmy Kidd, testified. They denied being at Heiskell Lawson's residence on the date in question and denied any knowledge of the stolen vehicle. They contended the $1,800 was for the purchase of a boat by Lawson from Kidd. The defendant admit-

1. Not related to defendant.

ted writing the check and signing his wife's name. The defendant said that when his wife learned of this "she went plumb off" because there were not sufficient funds in the bank to cover the check. On the following Monday Kidd gave the defendant $1,800 in cash which the defendant said he then deposited to cover the check.

The codefendant's father testified in corroboration of the boat transaction. The defense also presented testimony from a Chevrolet service manager that wheels from a 1986 model would not fit a 1978 Camaro. It was developed on cross-examination that the codefendant had been employed by Beaty Chevrolet to prepare new cars.

Based upon this evidence the jury convicted the defendant and his codefendant, Jimmy Kidd, of concealing stolen property.

■ The defendant directs a three-pronged attack at the sufficiency of that evidence to convict. In considering such challenges this Court must view the evidence in the light most favorable to the prosecution with the State being entitled to the strongest legitimate view and with all reasonable and legitimate inferences being resolved in their favor. The evidence will be deemed to have been sufficient if, when viewed in this manner, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. T.R.A.P. 13(e); *State v. Cabbage*, 571 S.W.2d 832 (Tenn.1978); *State v. Hodgkinson*, 778 S.W.2d 54 (Tenn.Crim.App. 1989).

■ Conviction of the offense of concealing stolen property having a value of over Two Hundred Dollars ($200.00) requires proof of the theft, the value of the goods taken, defendant's actual or constructive possession with knowledge that the goods were stolen, and concealment or aid in the concealment of the goods with intent to deprive the true owner thereof. *State v. Tuggle*, 639 S.W.2d 913 (Tenn. 1982); *State v. Lawson*, 695 S.W.2d 202 (Tenn.Crim.App.1985).

■ The defendant first argues that he was convicted on the uncorroborated testimony of accomplices. He contends that Heiskell Lawson, Jeffrey Lawson and Ann Lawson were accomplices as a matter of law and says the trial court erred in not so charging the jury as to Jeffrey and Ann Lawson.

In order to be an accomplice, one must knowingly, voluntarily and with common intent unite with the principal offender in the commission of the crime. An accomplice is not "a person who has guilty knowledge, or is morally delinquent, or who was even an admitted participant in a related but distinct offense." *Pennington v. State*, 478 S.W.2d 892 (Tenn.Crim.App. 1971); *State v. Foster*, 755 S.W.2d 846 (Tenn.Crim.App.1988). Quoting from Wharton's Criminal Evidence, Vol. 2, 12th Ed., 1955, Section 448, this Court further observed in *Pennington:*

> The generally accepted test as to whether a witness is an accomplice is whether he himself could have been convicted for the offense, either as principal or accessory.

The question of who determines whether a person is an accomplice depends upon the facts of each case. When the facts of a witness' participation in a crime are clear and undisputed it is a question of law for the court to decide. When such facts are in dispute or susceptible of an inference that a witness may or may not be an accomplice, it then becomes a question of fact for the jury to decide. *Bethany v. State*, 565 S.W.2d 900 (Tenn.Crim.App.1978).

Heiskell Lawson had, prior to this trial, been convicted of this identical offense and thus was an accomplice as a matter of law. The jury was so instructed.

We are unable to determine from this record whether Ann Lawson was charged with reference to the vehicle in the instant case or the Ford truck for which her son was charged and convicted. At any rate that charge was dismissed. From our review of this record we feel that it fails to show that she was an accomplice in the instant crime. At most the evidence merely shows that while in her own home she observed the defendant and codefendant

outside with what the proof shows was a stolen vehicle.

Jeffrey Lawson was convicted of a totally different offense which seemingly triggered the investigation which resulted in the instant charges. His action in placing the parts in the basement and his explanation as to his lack of guilty knowledge raised a question of fact for the jury as to whether or not he was an accomplice.

Under special instructions from the court,[2] the jury by its verdict obviously determined that one or both were not accomplices. The evidence does not preponderate against that finding. Given the testimony of either witness there is an abundance of evidence in this record corroborating the testimony of Heiskell Lawson including proof of the $1,800 check and the testimony of Detective Clevinger about the I.R.O.C. wheels on defendant's vehicle.

It is next contended that the State failed to prove that the defendant knew the property was stolen. Guilty knowledge may be shown by proof of inadequate purchase price. *State v. Fritts*, 626 S.W.2d 713 (Tenn.Crim.App.1981). Here the jury obviously rejected the defendant's claim that the $1,800 check was for the purchase of a boat and found that it was in payment for an $18,000 automobile.

Finally, the defendant's claim that the evidence is insufficient because it is entirely circumstantial is not tenable. The law is well settled in Tennessee that a crime may be proven wholly by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237 (Tenn.1973). Appellate courts weigh circumstantial evidence the same way as direct evidence. *State v. Hailey*, 658 S.W.2d 547 (Tenn.Crim.App.1983). In circumstantial evidence cases single facts of themselves may count each for little

weight, but when all of the facts and circumstances are put together they may unerringly point the finger of guilt to the defendant to the exclusion of all others beyond a reasonable doubt. *State v. Hailey, supra.*

We have closely examined the evidence adduced during defendant's trial and find it sufficient to justify a rational trier of fact in finding him guilty of concealing stolen property over the value of Two Hundred Dollars ($200.00) beyond a reasonable doubt. Rule 13(e), T.R.A.P. This issue is without merit.

In his final issue the defendant says he should have received the minimum sentence of three years and that the sentence should have been suspended.

The record reflects that immediately after verdict the sentencing hearing was conducted. The appellate record does not contain a transcript of that hearing. In the absence of an adequate record we must presume that the trial court's ruling was adequately supported by the evidence. Tenn.R.App.P. 13(c); *State v. Beech*, 744 S.W.2d 585 (Tenn.Crim.App.1987). We have, however, reviewed the presentence report and considered the trial evidence in the light of the statutory sentencing principles and find no basis for disturbing the sentence imposed.

The judgment of the trial court is affirmed.

SCOTT and BIRCH, JJ., concur.

2. The jury was told that if they found that both Ann and Jeffrey Lawson were accomplices they could not convict the defendants.