# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### May 20, 2014 Session

## STATE OF TENNESSEE v. TONY DEMARCUS WILLIAMS

### Appeal from the Criminal Court for Knox County
### No. 97652 B     Bobby R. McGee, Judge

_____

### No. E2013-00513-CCA-R3-CD - Filed August 4, 2014

_____

Defendant, Tony Demarcus Williams, was indicted by the Knox County Grand Jury for possession of more than .5 grams of cocaine within a school zone with the intent to sell and possession of more than .5 grams of cocaine within a school zone with intent to deliver. A petit jury convicted Defendant as charged, and the trial court merged the two convictions. The trial court sentenced Defendant to 15 years in confinement. Defendant asserts on appeal that the trial court erred in denying his motion to suppress the search warrant; that accomplice testimony was not sufficiently corroborated; and that the trial court erred by not allowing Defendant to make a proffer of evidence at the hearing on the motion for new trial regarding alleged prosecutorial misconduct. Finding no error, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., and JEFFREY S. BIVINS, SP. J., joined.

A. Philip Lomonaco, 800 S. Gay Street, Suite 2610, Knoxville, Tennessee, for the appellant, Tony Demarcus Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Jennifer Welch, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

*Facts*

Ashley Hill lived with Defendant in November, 2010. She testified that she and Defendant kept crack cocaine in their house for the purpose of selling it. The house is located within 1,000 feet of Belle Morris Elementary School. Beginning on November 1, 2010, the Knoxville Police Department conducted a series of controlled purchases of cocaine using a confidential informant at a house located across the street from Ms. Hill's house. During these purchases, the police observed individuals going back and forth between the two houses. Upon closer surveillance, during the fourth controlled purchase, the confidential informant entered the house across the street from Ms. Hill's house to purchase crack cocaine. Police then observed Linda Cawood, the occupant of the neighboring residence, walk to Defendant's residence, where she stayed for 30 seconds to a minute, and return to her house, where the sale was completed.

Officer Phillip Jinks of the Knoxville Police Department executed a search warrant on Defendant's residence on November 17, 2010. As he approached the house, Officer Jinks saw a Chevrolet Tahoe that was registered to Ms. Hill arrive at the residence. Officer Jinks made the decision to secure the residence and execute the search warrant. Five minutes later, Defendant approached the house and asked, "what's going on, this is my crib." Officer Jinks instructed Defendant to sit on the front porch while officers searched the residence.

Officers found a "wad of cash and a baggie of crack cocaine" in a planter on a shelf in the living room. The substance was confirmed by a Tennessee Bureau of Investigation (TBI) lab analysis to be 0.8 grams of crack cocaine. In the kitchen, officers found a small digital scale that had what appeared to be a white cocaine-like substance on it, a box of sandwich baggies, and razor blades. Officer Jinks testified that those items are commonly used in the distribution of crack cocaine and that the crack cocaine was cut and packaged in a way that is consistent with distribution. Officers also found $820 cash in a shoe in the bedroom. A $20 bill found among this cash had been used by the confidential informant to purchase crack cocaine six days prior. Also in the bedroom, officers found a piece of mail addressed to "Tony O. Williams" at the address of the residence.

Linda Cawood testified that she was charged with "selling and delivery of crack cocaine" and that she received a sentence of "12 years['] probation" pursuant to a plea agreement. She testified that she "sold drugs" from the home where she lived with her mother and son. Ms. Cawood testified that in November, 2010, when the confidential informant went to her house to purchase crack cocaine, she walked across the street to Defendant's and Ms. Hill's residence and purchased crack cocaine from Defendant and Ms.

Hill. She testified that Defendant got the crack cocaine from "a flower pot in the corner or in the kitchen in the cabinet."

Defendant testified that at the time of his arrest, he "was back and forth" between Ms. Hill's home and his aunt's home. He testified that he and Ms. Hill were "going through problems that couples go through, so [he] wasn't really there much." He testified Ms. Hill told him that she was selling drugs and "it was one of [their] fights [they] had." Defendant testified that he saw Ms. Hill sell drugs on two occasions, and he was "trying to get her to quit but she didn't want to quit." Defendant testified that he never sold crack cocaine to Ms. Cawood. He testified that he was present "on some occasions [when Ms. Cawood came] to do her transaction." Defendant testified that Ms. Hill kept the crack cocaine on the top shelf in the living room.

On cross-examination, Defendant testified that he only stayed at Ms. Hill's house "[m]aybe three days" a week. He denied that the shoe in which $820 was found was his, testifying that he thought it was his nephew's shoe, although Defendant acknowledged that the shoe was found in the closet of the bedroom where Defendant slept with Ms. Hill. Defendant testified that when he arrived home on the day the search warrant was executed, he parked down the street and walked to the house because he did not have a valid driver's license at that time. He testified that he knew there was a digital scale in the kitchen, and he testified that "you can use them for anything." He testified that he was "a weed smoker," and he "might use [it] for that." Defendant denied that he told the police that he lived at the residence.

Dan Jones was Defendant's supervisor at Tennessee Waste, a recycling facility. He testified that Defendant had been employed there for two years. He testified that Defendant "ha[d] been a good guy up there" and that he had "never had any problems with him." Mr. Jones testified that Defendant had "always been straight forward" with him and that he had "never had any reason to doubt anything he's ever said or done[.]" Mr. Jones testified that Defendant submitted to a drug screen prior to being hired, but Defendant had not had a drug screen since that time. Mr. Jones was "surprised" to learn of Defendant's charges.

*Analysis*

*Sufficiency of the affidavit to establish probable cause*

Defendant challenges the validity of the affidavit underlying the search warrant. Defendant argues that the facts used to support probable cause consist entirely of "unsupported statements from criminals." The State responds that the affidavit established

probable cause based on the direct observation of police officers as well as the observations of a reliable confidential informant.

We note that Defendant has failed to include a transcript of the suppression hearing in the record on appeal. Nevertheless, Defendant's omission does not preclude appellate review of the issue because this court can consider only the affidavit in reviewing whether the issuance of a search warrant is based upon probable cause. *State v. Smotherman*, 201 S.W.3d 657, 661 (Tenn. 2006). In this case, the search warrant and the affidavit were attached to Defendant's motion to suppress, were examined and referred to by the trial court, and are included in the record before us; therefore, we may review the issue. *See id*. (citing *State v. Bobadilla*, 181 S.W.3d 641, 643 (Tenn. 2005)).

We now turn to Defendant's contention that the affidavit relied upon by the magistrate in issuing the search warrant failed to establish probable cause. An affidavit establishing probable cause is an indispensable prerequisite to the issuance of a search warrant. *See*, *e.g.*, Tenn. Code Ann. § 40-60-103; Tenn. R. Crim. P. 41(c); *State v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998); *State v. Moon*, 841 S.W.2d 336, 338 (Tenn. Crim. App.1992). Such probable cause "must appear in the affidavit [itself] and judicial review of the existence of probable cause will not include looking to other evidence provided to or known by the issuing magistrate or possessed by the affiant." *Moon*, 841 S.W.2d at 338; *see also Henning*, 975 S.W.2d at 295. To sufficiently make a showing of probable cause, an affidavit "must set forth facts from which a reasonable conclusion might be drawn that the evidence is in the place to be searched." *State v. Smith*, 868 S.W.2d 561, 572 (Tenn. 1993). However, a decision regarding the existence of probable cause requires that the affidavit contain "more than mere conclusory allegations by the affiant." *State v. Stevens*, 989 S.W.2d 290, 293 (Tenn. 1999); *see also Moon*, 841 S.W.2d at 338.

Furthermore, when "probable cause for a search is based upon information from a confidential informant, there must be a showing in the affidavit of both (1) the informant's basis of knowledge and (2) his or her veracity." *State v. Powell*, 53 S.W.3d 258, 262 (Tenn. Crim. App. 2000); *see also State v. Jacumin*, 778 S.W.2d 430, 432, 435-36 (Tenn. 1989) (utilizing the standard set out in *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969) and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L. Ed. 2d 723 (1964)). To sufficiently make such showings, the affidavit must include facts permitting "the magistrate to determine: (1) whether the informant had a basis for his information that a certain person had been, was, or would be involved in criminal conduct or that evidence of crime would be found at a certain place" and (2) whether the informant is inherently credible or "the reliability of his information on the particular occasion." *Moon*, 841 S.W.2d at 338. Again, the courts have stressed that conclusory statements absent supportive detail will not suffice to establish these requirements. *See*, *e.g.*, *id*. at 339. However, "independent police

corroboration" may compensate for deficiencies. *See Jacumin*, 778 S.W.2d at 436; *Moon*, 841 S.W.2d at 340.

Case law warns against a hyper-technical application of the *Aguilar-Spinelli* test, and this court has previously provided that "[t]he requisite volume or detail of information needed to establish the informant's credibility is not particularly great." *State v. Lowe*, 949 S.W.2d 300, 305 (Tenn. Crim. App. 1996). However, precedent also provides that "the affiant must provide some concrete reason why the magistrate should believe the informant." *Id*.

In the present case, Defendant challenges both prongs of the test. First, he argues that the confidential informant had no basis of knowledge of the facts alleged in the affidavit and that he "just repeated [to the police] what the criminals had told him." Defendant also asserts that facts supplied by the confidential informant were not sufficiently corroborated and that the corroborated facts were of non-suspect behavior.

In the affidavit, Officer Jinks, the affiant, verified that Ms. Hill lived in the residence to be searched. During a drug investigation at the house across the street from Ms. Hill's residence (Ms. Cawood's residence), officers observed "numerous individuals walking back and forth between" the two residences. During one surveillance, Officer Jinks observed a vehicle leaving the rear driveway of Ms. Cawood's residence. He called for a patrol officer to stop the driver of the vehicle after the driver made a traffic violation. The driver told the officer that he had purchased crack cocaine from Ms. Cawood and that Ms. Cawood obtained the crack cocaine from a house "across the street[.]" The following day, an officer conducted a traffic stop of another vehicle leaving Ms. Cawood's residence. The individuals in that vehicle told the officer that they had purchased crack cocaine from Ms. Cawood "on numerous occasions." They also stated that Ms. Cawood obtained the crack cocaine from the house across the street.

The affidavit further states that the confidential informant had been working as an informant with the Knoxville Police Department for four years. During a series of controlled purchases, electronically monitored by the police, the confidential informant made "numerous controlled buys" of crack cocaine from Ms. Cawood and an individual known as "Jason" at Ms. Cawood's residence. During the first controlled purchase, officers observed the confidential informant enter Ms. Cawood's residence and heard the confidential informant ask to purchase crack cocaine. The informant asked Jason where Ms. Cawood was, and Jason informed him that she was "across the street." Shortly thereafter, Ms. Cawood entered the residence and sold crack cocaine to the informant. During the second controlled purchase, officers observed the confidential informant enter Ms. Cawood's residence to purchase crack cocaine. The informant gave the purchase money to Jason, and

Jason told the informant that it would be "three minutes, dude had to go across the street." Officers then observed "unknown people moving between" Ms. Cawood's residence and Ms. Hill's residence. A few minutes later, Jason delivered crack cocaine to the informant, and the informant made the purchase. During the third controlled purchase, officers observed the informant enter Ms. Cawood's residence. Again, Jason told the informant to wait. The informant asked if Ms. Cawood had gone across the street to get the crack cocaine, and Jason responded that she had. Officers observed a female matching the description of Linda Cawood walk to Ms. Hill's residence (the house to be searched) and stay for less than one minute. She then returned to the house, and Jason delivered crack cocaine to the informant. During the fourth controlled purchase, officers again observed the informant enter the residence of Ms. Cawood and then observed Ms. Cawood walk across the street from her residence to the residence to be searched and return shortly thereafter, at which time Jason delivered crack cocaine to the informant.

We conclude that the informant's personal observations and knowledge of the activities that occurred at Ms. Cawood's residence, as corroborated by the officers' observations, satisfy both the basis of knowledge prong, as well as the credibility and reliability prong of the test. The confidential informant, while being electronically monitored by the police, completed several purchases of crack cocaine at Ms. Cawood's residence. The individual named Jason told the informant to wait because Ms. Cawood was retrieving the crack cocaine from the residence across the street. On at least two occasions, officers observed a person matching Ms. Cawood's description walk across the street to Ms. Hill's residence (the residence to be searched) and return quickly, *while* the informant was waiting at Ms. Cawood's house to purchase crack cocaine. Upon her return, the informant completed the purchase of crack cocaine. Defendant asserts that the only direct observation by officers was of non-suspect activity, or innocuous movement of individuals between the two houses. We disagree. The officers' observations support the reasonable inference that the crack cocaine was located in the house across the street from Ms. Cawood's residence because the movement between the two houses occurred during the short period of time between an agreement to purchase drugs and the actual delivery of the drugs to the confidential informant.

Although corroboration of more than a few minor elements of the informant's information is necessary, especially if the elements relate to non-suspect behavior, *State v. Smotherman*, 201 S.W.3d 657, 664 (Tenn. 2006), the events observed by the police need not supply probable cause by themselves or point unequivocally toward guilt. *Moon*, 841 S.W.2d at 341. The observations by police are sufficient if they provide an "'unusual and inviting explanation,'" even though the observations are "'as consistent with innocent as with criminal activity.'" *Id*. (quoting Wayne R. LaFave, Search and Seizure, § 3.3(f) at 683 (2d ed.1987)).

We conclude that the affidavit sufficiently establishes probable cause for the search. Defendant is not entitled to relief on this issue.

*Corroboration of accomplice testimony*

Defendant contends that his conviction was based solely on uncorroborated accomplice testimony. The State contends that Defendant's argument assumes that both Ms. Hill and Ms. Cawood were accomplices, but the State asserts that Ms. Cawood was not an accomplice because she was a purchaser of crack cocaine from Defendant, and therefore, Ms. Cawood's testimony needed no corroboration. The State further asserts that Ms. Cawood's testimony, that she purchased crack cocaine from Defendant, corroborated Ms. Hill's testimony that Defendant kept a stash of crack cocaine in the home for the purpose of selling it.

In Tennessee, a conviction may not be based solely upon the uncorroborated testimony of an accomplice. *State v. Bane*, 57 S.W.3d 411, 419 (Tenn. 2001); *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001) (citations omitted). Furthermore, accomplices cannot corroborate each other. *State v. Boxley*, 76 S.W.3d 381, 386 (Tenn. Crim. App. 2001). "An accomplice is one who knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime." *State v. Allen*, 976 S.W.2d 661, 666 (Tenn. Crim. App. 1997). Typically, the test for determining whether a witness is an accomplice is whether he himself could have been convicted for the offense. *Id.*; *State v. Lawson*, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990).

The question of who determines whether a witness is an accomplice depends upon the evidence introduced during the course of a trial. *Bethany v. State*, 565 S.W.2d 900, 903 (Tenn. Crim. App. 1978). When the undisputed evidence clearly establishes the witness is an accomplice as a matter of law, the trial court, not the jury, must decide this issue. *State v. Lawson*, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990). On the other hand, if the evidence adduced at trial is unclear, conflicts, or subject to different inferences, the jury, as the trier of fact, is to decide if the witness is an accomplice. *Id.* Under either scenario, the issue of whether the witness's testimony has been sufficiently corroborated becomes a matter entrusted to the jury as the trier of fact. *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994).

The record reflects that the trial court, in denying Defendant's motion for judgment of acquittal, found that Ms. Hill and Ms. Cawood "would probably be categorized as accomplices of the defendant." However, the trial court's instructions to the jury did not identify either witness as an accomplice. In its instructions to the jury, the trial court defined accomplice status and instructed the jury to consider accomplice testimony only if the testimony was supported and corroborated by independent evidence.

We conclude that the record does not support the State's contention that as a matter of law, Linda Cawood was not an accomplice. Nevertheless, we conclude that Ms. Cawood's testimony that she purchased crack cocaine from Defendant, who retrieved it from a planter in the living room, was sufficiently corroborated by Officer Jinks' testimony that crack cocaine was found in that specific location.

Our supreme court has held that in order to properly corroborate accomplice testimony,

> [t]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's [testimony].

*Shaw*, 37 S.W.3d at 903 (quoting *Bigbee*, 885 S.W.2d at 803). Furthermore, independent evidence, though slight and entitled to little weight when standing alone, is sufficient to corroborate accomplice testimony. *State v. Heflin*, 15 S.W.3d 519, 524 (Tenn. Crim. App. 1999). However, evidence that merely casts suspicion on the accused is inadequate to corroborate an accomplice's testimony. *Boxley*, 76 S.W.3d at 387 (citations omitted). The sufficiency of the corroboration is a determination for the jury. *Shaw*, 37 S.W.3d at 903.

In a light most favorable to the State, the evidence demonstrated that Defendant resided in the house where crack cocaine was found. When Defendant arrived at the time of the search, he told police "that's my crib." Police also found in the residence a digital scale, razors, and $820 cash in a shoe that was located in the closet of the bedroom where Defendant testified he slept. A $20 bill found in the shoe was identified as one of the bills used by the confidential informant to purchase crack cocaine from Ms. Cawood. Defendant denied that the shoe belonged to him; however, it was the jury's duty as the finder of fact to assess credibility. Defendant testified at trial that he was present in the home during drug transactions but that he had no involvement in the transactions. Again, the jury assessed the credibility of Defendant's testimony.

As previously stated, evidence independent of accomplice testimony, though slight and circumstantial, is sufficient to corroborate accomplice testimony. Consequently, after

reviewing the record, we conclude that sufficient corroborative evidence exists to uphold Defendant's convictions.

*Offer of proof regarding prosecutorial misconduct*

Lastly, Defendant contends that the trial court erred by not allowing him to present testimony or make an offer of proof at the hearing on his motion for new trial. Defendant claims that during the trial, the prosecutor engaged in prosecutorial misconduct. At trial, after the close of Defendant's proof, defense counsel made a motion for mistrial, alleging that the prosecutor "intimidat[ed] witnesses and the defendant" outside of the courtroom. Defense counsel initially requested to present testimony to the court. The State requested to be "apprised of what grounds of prosecutorial misconduct are being alleged[,]" and the trial court stated:

> All right. You can make your motion now. We won't conduct an evidentiary hearing now. They're entitled to notice and an opportunity to prepare or you can consider making it part of your motion for new trial should that be necessary.

Defense counsel again requested to offer testimony concerning the allegation that witnesses were intimidated, and the State suggested to the trial court that defense counsel be allowed to "re-open [Defendant's] proof if they've got witnesses that they are willing to say are going to testify about how they were intimidated into not testifying or changing their stories." Defense counsel explained to the court that on the evening prior, after the court had recessed for the day, Defendant and his aunt, who had intended to testify on his behalf, were arrested outside the courtroom. The trial court offered Defendant the opportunity to re-open his case and present the testimony of Defendant's aunt or any other witnesses Defendant claimed had been intimidated by the prosecutor and as a result, changed their testimony. Defense counsel stated that the witness had "cooled off" and decided not to testify, and defense counsel declined the trial court's invitation to present any additional witnesses.

At the hearing on Defendant's motion for new trial, defense counsel again addressed the issue of the alleged witness intimidation and requested to make a proffer of evidence. The trial court found that Defendant had waived the issue by failing to call the witness when given the opportunity during the trial. The trial court stated:

> From the Court's standpoint a Motion for New Trial is an opportunity for the Court to correct any legal errors that the Court made during the trial. This Court has nothing to do with determining whether a defense witness is going to take the stand or not. If counsel wants to call a

witness, counsel has the benefit of compulsory process. The defendant actually has that, and counsel exercises it.

I do recall that there were disturbances throughout several portions of this trial. But on this specific issue I do recall that it was related to the Court that a defense witness or witnesses were concerned about their safety, or upset somehow about whether it was okay for them to testify. I do recall that I offered assurances that they – that my court officers would make sure that nothing happened to them in the courtroom.

. . . . At any rate, that has nothing to do with a legal error that this Court committed. There was no – I made no decision with respect to that issue except to offer a safe place for them to testify should they wish to testify.

And this Court would have to find then that this ground [ ] is not an allegation of error committed during the trial that the Court can correct by granting a new trial or any other remedy the Court has. So the Court would deny any relief sought in [this] issue . . . .

The trial court found that the issue was "outside the scope of [Tennessee] Rule [of Criminal Procedure] 33" and denied Defendant's request to present testimony regarding the issue at the hearing. The trial court noted, however, that Defendant could file affidavits in support of his claim, and Defendant declined to do so.

At the hearing on a motion for new trial, the trial court "*may* allow testimony in open court on issues raised in the motion for new trial." Tenn. R. Crim. P. 33(c)(1) (emphasis added). A defendant may file affidavits in support of his motion for new trial. "The court *shall* consider any such affidavits as evidence." Tenn. R. Crim. P. 33(c)(2)(A) (emphasis added).

Tennessee Rule of Appellate Procedure 36(a) states that "[n]othing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." "It is well-settled that a litigant 'will not be permitted to take advantage of errors which he himself committed, or invited, or induced the trial court to commit, or which were the natural consequence of his own neglect or misconduct.'" *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004) (quoting *Norris v. Richards*, 246 S.W.2d 81, 85 (Tenn. 1952)).

An important purpose of an offer of proof is to foster appellate review. *Alley v. State*, 882 S.W.2d 810, 815 (Tenn. Crim. App. 1994). A party may obtain relief based upon

erroneously excluded evidence if "the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context." Tenn. R. Evid. 103(a)(2); *see Alley*, 882 S.W.2d at 815 (holding that as a general principle, an appellant must make an offer of proof of excluded evidence he seeks to have admitted unless its substance is otherwise apparent). In this regard, the trial court "shall permit the making of an offer in question and answer form." Tenn. R. Evid. 103(b). Given the mandatory language of the rule, a trial court should exercise its discretion sparingly in denying a party the opportunity to place on the record the evidence in testimonial, as opposed to narrative form. *See* Neil P Cohen, et al., Tennessee Law of Evidence, § 1.03 [5][d] (5th ed. 2005) (noting that narrative of excluded proof is not the best or encouraged method for an offer of proof and that the strongly encouraged method is by presentation of the actual testimony). Only if it is obvious from the record that the proffered evidence could not be relevant in any way to the issues on trial, can the trial court properly deny a party's request to make an offer of proof. *Alley*, 882 S.W.2d at 816.

In the present case, it is apparent from the record that the substance of Defendant's proffered evidence was that a witness for Defendant, Defendant's aunt, would have testified on behalf of Defendant but for alleged intimidation by the prosecution. At trial, the trial court offered Defendant the opportunity to present the testimony of the witness, and Defendant declined. Subsequently, at the hearing on Defendant's motion for new trial, the trial court determined that Defendant had waived the issue by failing to present the witness at trial. The trial court instead offered Defendant the opportunity to file affidavits in support of his claim, and Defendant again declined. Therefore, we conclude that Defendant's actions in failing to either present the witness's testimony at trial, or alternatively, in the form of an affidavit in support of his motion for new trial, have prevented Defendant from preserving the issue on appeal. Defendant is not entitled to relief on this issue.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE

-11-