IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 4, 2020

**STATE OF TENNESSEE v. QUINTAVIOUS HILL**

**Appeal from the Criminal Court for Shelby County**
**No. 17-02007       James M. Lammey, Judge**

_____

**No. W2019-01041-CCA-R3-CD**

_____

A Shelby County jury convicted the defendant, Quintavious Hill, as charged of attempted second degree murder, aggravated assault, and employing a firearm during the commission of a dangerous felony, and the trial court imposed an effective eleven-year sentence. See Tenn. Code Ann. §§ 39-12-101, 39-13-210, 39-13-102(a)(1)(A)(iii), 39-17-1324(b). On appeal, the defendant argues that the evidence is insufficient to sustain his convictions. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ALAN E. GLENN, J., joined.

W. Price Rudolph (on appeal), and Jason Matthews and James Schaeffer (at trial), Memphis, Tennessee, for the Defendant-Appellant, Quintavious Hill.

Herbert H. Slatery III, Attorney General and Reporter; Katherine K. Decker, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Jamie Kidd, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

This case concerns an incident on October 23, 2016, when the defendant[1] and his codefendant, Vintario Tate,[2] shot at Keith Harris, the victim, just after he dropped off Victoria Richardson at the Kimball Cabana apartment complex.

_____

[1] We acknowledge that we do not use titles when referring to every witness. We intend no disrespect in doing so. Judge John Everett Williams believes that referring to witnesses without proper titles is disrespectful even though none is intended. He would prefer that every adult witness be referred to as Mr. and Ms. or by his or her proper title.

[2] Defendant Quintavious Hill and codefendant Vintario Tate were tried jointly.

At trial, Victoria Richardson testified that she and the victim dated in high school and remained friends. She said the victim drove her to the apartment complex "to see a friend" around 7:00 p.m. on October 23, 2016, although she could not recall the name of this friend. The victim backed into a parking space at the complex, and after Richardson exited his car, she observed one man pulling at the door handle of the victim's car and another man shooting at the victim's car. She said that during the shooting, the victim was able to drive away, and she ran away.

Richardson said she recognized the defendant as one of the men involved in this incident because they were "friends" on the social media application Facebook. On November 3, 2016, Richardson went to the police station and identified the defendant in a photographic lineup as the individual she saw shooting at the victim. On November 5, 2016, she identified co-defendant Vintario Tate as the man she saw pulling on the victim's door handle during the incident. Richardson also identified both the defendant and codefendant Tate at trial as the perpetrators of the October 23, 2016 incident.

On cross-examination, Richardson asserted that it was "more than likely that [the victim] reached out to [her] first" on October 23, 2016. While she initially testified that she had gone to the apartment complex to see a friend, Richardson later testified that she could not remember why she went there but thought it was "[t]o chill." She acknowledged that it was getting dark on October 23, 2016, when she and the victim arrived at the apartment complex; however, she insisted that she was able to see the two men who approached the victim's car, although she could not recall whether the men were wearing hoodies. Just after the shooting, she texted the victim, asking him to come back and pick her up, but the victim never responded. Richardson said that the trial was the first time she had seen the two men involved in the shooting or the victim since October 23, 2016, and that she had not communicated with any of them since the incident.

Richardson said she was close to the victim's car when the shooting began. She denied talking to anyone when she got out of the victim's car and denied walking anywhere once she got out of the car. She admitted that she had gone to the police station to talk to Investigator Tynkala only because he told her that if she did not come to the station, he would pick her up and bring her there. Richardson did not recall telling Investigator Tynkala on October 25, 2016, that she had gone to the apartment complex to get money from someone named "Paco," that she had asked a group of people where she could find "Paco," and then had been led by an unknown African-American male to "Paco" at the time she heard shots being fired on the side of the building where the victim was parked. However, Richardson did remember showing Investigator Tynkala the Facebook pages belonging to the defendant and Tate.

- 2 -

Richardson admitted that she did not want to be involved in the police investigation of this case and did not want to testify at trial because she did not "want to be a part of it." She denied having a relationship with the defendant or codefendant Tate and asserted that she had no reason to lie about their involvement in the incident. She said that she knew the defendant from Facebook and when she saw a photograph on Facebook of the defendant and Tate together, she recognized Tate as the second man who was pulling on the door handle of the victim's car. She asserted that at the time of the incident, she was able to see the faces of the defendant and Tate "from the rear and the side" because there was nothing obstructing their faces.

Keith Harris, the victim, testified that Victoria Richardson was his ex-girlfriend and that Richardson contacted him on Facebook on October 23, 2016, to say that she was bored and wanted to go out, so he offered to take her to dinner. He picked her up and tried to take her to a restaurant, but Richardson told him to take her to the apartment complex where her brother lived.

The victim and Richardson arrived at the apartment complex at 7:00 p.m., and he backed his car into one of the parking spaces. Richardson exited his car and walked around the corner of the building, and "a couple of seconds later" two men wearing black hoodies and carrying guns came toward him from around the same corner. These two men, whom he had never met before, approached his car, told him not to move, and began pulling on his car's door handles, with one at the driver's door and one at the passenger's door. The victim said the men began shooting at him, and he quickly drove off as both men continued to fire shots at him. He said the two men put approximately ten bullet holes in his car, some of which shattered the driver's side and passenger's side windows. In addition, one of these bullets grazed his right shoulder. The victim said he feared for his life during the shooting. Immediately after the shooting, he went to one police station, which was closed, and as he was headed to another station, an officer pulled him over for an "[i]mproper registration," and he informed the officer about what had just happened. The officer took photographs of the damage to his car from the shooting and retrieved at least one bullet from inside his car. The victim said that although Richardson tried to contact him after the shooting, he did not respond to her.

On October 24, 2016, the victim gave a statement of what happened to a police officer. Later, because he believed Richardson was involved in the shooting, he looked on Richardson's Facebook page and immediately recognized the defendant as one of the shooters from a photograph there and informed the police. On October 30, 2016, the victim identified the defendant in a photographic lineup as one of the perpetrators. On November 6, 2016, he identified codefendant Tate in a photographic lineup as the other perpetrator. In addition, he identified both the defendant and Tate as the perpetrators

during trial. The victim asserted that he was positive that the defendant and Tate were the two men who shot at him on October 23, 2016.

Investigator Jason Tynkala with the Memphis Police Department testified that he was assigned the victim's case and that he called Richardson and the victim to determine what happened. Investigator Tynkala said that Richardson helped him develop the defendant and Tate as suspects from their Facebook pages. Richardson told him that because she asked the victim to take her to the apartment complex so she could get money from someone, she was afraid it looked as if she had set up the victim. Richardson also told him that when she exited the victim's car, she walked around the corner, asked a group of people where to find the person she was looking for, and then someone led her to meet that person when she heard the gunshots fired from the other side of the building and saw the shooters and observed the victim driving away.

After talking to Richardson, Investigator Tynkala talked to the victim, who also helped him develop the defendant and Tate as suspects. He recalled the victim showing him the photograph of the defendant on Richardson's Facebook page. Thereafter, Investigator Tynkala said that Richardson and the victim separately identified both the defendant and Tate as the perpetrators in different photographic lineups.

On cross-examination, Investigator Tynkala said that although he went to the crime scene after the fact, he did not find any bullet fragments or any other evidence to collect. He also said that the police did not collect any bullet fragments or other evidence from the victim's car and that he was unable to investigate the text messages on Richardson's phone. He admitted that, other than the identifications made by Richardson and the victim, there was no other evidence connecting the defendant and Tate to these crimes.

Investigator Tynkala said that at the time of his investigation he believed that Richardson was involved in these crimes and that at the time of trial, he still believed Richardson was involved in these offenses. He asserted that after Richardson provided the defendant and Tate as suspects, he presented the victim with the photographic lineups to see if he also could identify the defendant and Tate as suspects, and the victim identified both men as the perpetrators.

At the conclusion of trial, the jury convicted the defendant of attempted second degree murder, aggravated assault, and employing a firearm during the commission of a dangerous felony. Following sentencing, the defendant filed a timely motion for new trial, arguing that the verdict was against the weight of the evidence, which the trial court denied. The defendant then filed a timely notice of appeal.

## ANALYSIS

The defendant argues that the evidence is insufficient to sustain his convictions. Specifically, he claims Victoria Richardson, who identified him as one of the individuals who shot at the victim's car, was an accomplice and that her testimony was not sufficiently corroborated to establish his identity as a perpetrator. The defendant contends that no reasonable juror could have accredited Richardson's testimony as a non-accomplice because she was only able to see the side of the perpetrator's head during the incident, which occurred at night, and because her identification of the defendant was based on an unreliable search of her Facebook page. Instead, he asserts that Richardson was an accomplice because her trial testimony contradicted her prior statements to the victim and Investigator Tynkala about why she had gone to the apartment complex the night of the incident. Finally, the defendant claims that Richardson's testimony identifying him as a perpetrator was not sufficiently corroborated because the only witness who verified her testimony was the victim, who made an unreliable identification of the defendant through Richardson's Facebook page, and because there was no physical evidence connecting him to the crimes.

The State responds that victim independently identified the defendant as a perpetrator and that the victim's testimony alone is sufficient to sustain the defendant's convictions. Alternatively, the State contends that, even if the jury determined that Richardson was an accomplice, the victim's identification of the defendant was sufficient to corroborate Richardson's testimony. We agree with the State.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686,

691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting Hanson, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." Wagner, 382 S.W.3d at 297 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

"The identity of the perpetrator is an essential element of any crime." Rice, 184 S.W.3d at 662 (citing State v. Thompson, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving the identity of the defendant as the perpetrator beyond a reasonable doubt. State v. Cribbs, 967 S.W.2d 773, 779 (Tenn. 1998). The identity of the defendant as the perpetrator may be established by direct evidence, circumstantial evidence, or a combination of the two. Thompson, 519 S.W.2d at 793. The identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. State v. Thomas, 158 S.W.3d 361, 388 (Tenn. 2005) (citing State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993)). As relevant in this case, "the testimony of a victim, by itself, is sufficient to support a conviction." Strickland, 885 S.W.2d at 87 (citing State v. Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981)).

In Tennessee, it is well established that "a conviction may not be based solely upon the uncorroborated testimony of an accomplice." State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001) (citing State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); Monts v. State, 379 S.W.2d 34, 43 (Tenn. 1964)). An accomplice is a person who "knowingly, voluntarily, and with common intent with the principal unites in the commission of a crime." State v. Collier, 411 S.W.3d 886, 894 (Tenn. 2013) (citing State v. Bough, 152 S.W.3d 453, 464 (Tenn. 2004); Clapp v. State, 30 S.W. 214, 216 (Tenn. 1895)). To qualify as an accomplice, it is not enough that the witness possess guilty knowledge, be morally delinquent, or even have participated in a separate but related offense. State v. Lawson, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990). The test is whether the alleged accomplice could be indicted for the same offense with which the defendant is charged. Collier, 411 S.W.3d at 894. The Tennessee Supreme Court provided the following requirements for corroboration of accomplice testimony:

- 6 -

"[T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence."

Shaw, 37 S.W.3d at 903 (quoting Bigbee, 885 S.W.2d at 803). The jury must determine whether sufficient corroboration of accomplice testimony exists. Id.

Here, the defendant challenges only the sufficiency of the evidence establishing his identity as a perpetrator in this case. At trial, the victim identified the defendant as one of the men who shot at him the night of the incident. The victim also testified that, prior to trial, he had identified the defendant as a perpetrator in a photographic line-up. Accordingly, we conclude that the victim's identification alone was sufficient to establish the defendant's identity as a perpetrator in these offenses.

We also conclude that the jury could consider Richardson's testimony because it was sufficiently corroborated by the victim's testimony. At the conclusion of proof, the trial court instructed the jury that it had to determine whether Richardson was an accomplice and, if the jury found that she was, then it had to determine whether Richardson's testimony was sufficiently corroborated. The trial court provided the jury with the following instruction in this case, which follows the pattern jury instruction for accomplices:

An accomplice is a person who knowingly, voluntarily, and with common intent with the principal offender unites with him or her in the commission of the crime.

If a witness was an accomplice in the crime, then his or her testimony must be corroborated. Corroborating evidence is that evidence, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference not only that a crime has been committed but also that the defendant was implicated in it. This independent corroborative testimony

must include some fact or circumstance that affects the defendant's identity. Corroborative evidence may be direct or entirely circumstantial and it need not be adequate, in and of itself, to support a conviction. It is sufficient if the corroborative evidence fairly and legitimately tends to connect the defendant with the crime charged. It is a question for the jury to determine whether an accomplice's testimony has been sufficiently corroborated.

In this case it is a question for the jury to determine whether the witness, Victoria Richardson, was an accomplice in this alleged crime. If you find from the proof that the witness was an accomplice, then the defendant cannot be convicted upon the uncorroborated testimony of this witness. If you find that the witness was not an accomplice, then you will judge the weight to be given to her testimony just as you do that of the other witnesses in the case.

See 7 Tenn. Prac. Pattern Jury Instr. T.P.I.—Crim. 42.09 (2019 ed.) Even if the jury found that Richardson was an accomplice, Richardson's testimony identifying the defendant as one of the perpetrators was sufficiently corroborated by the victim's testimony, which identified the defendant as a perpetrator at trial and explained that he had previously identified the defendant as a perpetrator in a photographic lineup at the police station. Although the defendant argues that no reasonable juror could have accredited the testimony from Richardson or the victim, we reiterate that this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." Wagner, 382 S.W.3d at 297. Because the victim's identification alone was sufficient to establish the defendant as a perpetrator and because Richardson's testimony was sufficiently corroborated, we conclude that the evidence is sufficient to sustain the defendant's convictions.

## CONCLUSION

Based on the aforementioned authorities and reasoning, the judgments of the trial court are affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE